---

FAIRCHILD et al. v. PENNSYLVANIA R. CO.    (No. 314/43.)

(Supreme Court, Appellate Division, Third Department.   November 10, 1915.)

1. COMMERCE ⊘⟶27—INTERSTATE COMMERCE—WHAT IS.

   Where a brakeman was killed while uncoupling cars from an intrastate train, from which baggage destined for another state had been unloaded, and two of its cars were the same day used to carry baggage transferred to it from another state, the character of the train at the time decedent was killed determined that he was engaged in intrastate, rather than interstate, commerce.

   [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ⊘⟶27.]

2. MASTER AND SERVANT ⊘⟶250¾, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION COMMISSION—FINDINGS—CONCLUSIVENESS.

   Under Workmen's Compensation Law (Consol. Laws, c. 67) § 20, making the decision of the Commission on questions of fact conclusive, a computation by them of the amount of an award, where there is evidence as to decedent's earnings, will be assumed to be correct.

Appeal from Workmen's Compensation Commission.

Proceeding under the Workmen's Compensation Act by Mary Fairchild and others for compensation for the death of William Fairchild, opposed by the Pennsylvania Railroad Company, employer. From an award to the claimants, the employer appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Burlingham, Montgomery & Beecher, of New York City (Ray Rood Allen, of New York City, of counsel), for appellant.

Egburt E. Woodbury, Atty. Gen., and Jeremiah F. Connor, of New York City, for State Workmen's Compensation Commission.

Charles W. Gould, of New York City, for respondents.

HOWARD, J. This is a death claim. In some parts of the record William Fairchild, the deceased, is styled a brakeman, and in other places he is called a switchman; but, whatever he may have been styled, he was in the employ of the Pennsylvania Railroad Company at its terminal in New York City, and as such was, on August 25, 1914, attempting to uncouple two cars from a train, when there was some sort of an explosion of electricity, which is not very well explained, and is not material, and Fairchild was killed. The train which the

⊘⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

deceased was breaking apart was a local Long Island train. It was train No. 423, and had just come in from Port Washington, Long Island. None of the cars of the train ran outside the state, but two of the cars were afterward used that day to carry baggage which was transferred to them from New Jersey. The Pennsylvania Railroad Company had such arrangements with the Long Island Railroad Company that, although the deceased worked exclusively shifting cars for the Long Island Railroad Company, he was paid by the Pennsylvania Railroad Company. Tickets are sold by the Long Island Railroad Company for points outside the state of New York, and tickets purchased outside of the state are honored on that road; but there is no proof that train No. 423 carried any except local passengers, and, although the Commission has so found, there seems to be no proof that train No. 423 carried "baggage which was destined for another state." We must assume this to be a fact, however, for the Commission has so found, and, under section 20, we cannot review its finding. No train of the Long Island Railroad ever goes outside the state.

[1] The only point of importance made in this case is that the deceased was engaged in interstate commerce. It seems to us that this point is not well taken. The deceased, the railroad, and the trains operated exclusively within this state. The Long Island Railroad brought nothing into the state and carried nothing out of the state. Sometimes it carried interstate baggage and interstate passengers. This, perhaps, would be interstate traffic, under the ruling in Pacific Coast Ry. Co. v. U. S., 173 Fed. 448, 98 C. C. A. 31. The Commission has found that the train which the deceased was breaking up did, in this instance, carry interstate baggage. Except for this finding, there would be no question here. But assuming, as we must, that this is true, under our ruling in Parsons v. D. & H. Co., 167 App. Div. 536, 153 N. Y. Supp. 179, the claimant may nevertheless recover. There we said:

"The actual work being performed at the time of the injury determines its character, and is the real test whether it is interstate or intrastate work."

Therefore, even if train No. 423 had carried baggage, on its trip just ended, destined for another state, that baggage had been unloaded before the accident, and, at the time of the accident, the deceased was breaking up the train of empty cars preparatory to the formation of a new train. If the actual work being performed at the time of the injury is the real test as to whether it was interstate, surely the work being performed by the deceased when he was injured was not interstate, for he was uncoupling empty cars on a local railroad, operating always exclusively within this state—a railroad having no interstate characteristic whatever, except when actually engaged in carrying interstate passengers, baggage, or freight.

[2] A question is raised as to the amount of the award; the appellant contending that no evidence was presented from which the Commission was authorized to find that the average weekly earnings of the deceased was $24.64. But there was very definite evidence as to the earnings of the deceased during the 14 months preceding his death, and we must assume that the Commission did its duty, and

made the computation, which resulted in the sums awarded, according to law; and at all events the average weekly wage has been determined as a conclusion of fact, and where there is any evidence to support a conclusion of fact section 20 forbids us to review.

The award should be affirmed. All concur.