STATE ROAD COMMISSION v. INDUSTRIAL COMMISSION OF UTAH.

No. 3476.    Decided May 18, 1920.    (190 Pac. 544.)

1.  MASTER AND SERVANT—COMPENSATION CLAIMANT'S EVIDENCE HELD TO SHOW EMPLOYÉ KILLED BY LIGHTNING WAS SEEKING SHELTER. In a proceeding under Workmen's Compensation Act for compensation for death of an employé struck by lightning after having left a state road on which he worked, evidence *held*, to justify finding that he was seeking shelter from a storm when killed.

2.  MASTER AND SERVANT—EMPLOYÉ STRUCK BY LIGHTNING WHILE SEEKING SHELTER FROM STORM WAS INJURED IN "COURSE OF EMPLOYMENT." Where an employé working on a state road left the road to seek shelter from a storm, and was killed by lightning before reaching the shelter, his death was the result of an accident occurring in the course of his employment, within Comp. Laws 1917, Sections 3112, 3113, as amended by Sess. Laws 1919, Chapter 63.

3.  MASTER AND SERVANT—"AVERAGE WEEKLY WAGE" WITHIN COMPENSATION ACT DEFINED. Under Workmen's Compensation Act (Comp. Laws 1917, Section 3132), requiring benefits to be based on the "average weekly wage" at time of injury, the average weekly wage, where the employment is continuous, may be computed by multiplying the average daily wage by 300 and dividing by 52; but, where the employment is intermittent, the average weekly wage is determined by dividing the aggregate

amount earned by the number of weeks, including the weeks in
which no work was done.[1]

4.   STATUTE—EFFECT MUST BE GIVEN TO EVERY WORD IF POSSIBLE.
     In construing a statute effect must be given to every word if
     possible.

Proceedings under Workmen's ·Compensation Act for com-
pensation for death of J. C. Johnson, opposed by the State
Road Commission, employer. Award for claimant by the
Industrial Commission, and employer brings certiorari.

AWARD ANNULLED, with directions.

*Allen T. Sanford,* of Salt Lake City, for plaintiff.

*Dan B. Shields,* Atty. Gen., and *Jas. H. Wolfe, O. C. Dalby,
H. Van Dam, Jr., and D. M. Draper,* Asst. Attys. Gen., for
defendant.

THURMAN, J.

This case is before us on a writ of certiorari to review the
proceedings of the defendant commission in the matter of
an award to the dependents of one J. C. Johnson, deceased.

The findings and conclusions of the defendant are, in sub-
stance, as follows:

"That Joseph Clarence Johnson was employed by the State
Road Commissioner, beginning in the month of February, 1919, and
continuing until the 4th day of September, 1919, when he was drag-
ging a portion of the state highway, when a thunder storm arose,
and he left his team near a fence, and started toward a cabin in an
adjoining field for shelter, and at a point about 150 feet distant
from the team, and before reaching the cabin, he was struck by light-
ning and instantly killed. It was the duty of said Joseph Clarence
Johnson, under his employment, to drag the state road after rains
and at such other time as he was ordered so to do by his superior,
and the payroll of the State Road Commission shows that his wages
were three dollars per day when he worked, and that he put in the
following time:   February, six days four hours, nineteen dollars

[1] *Uintah Power & Light Co.* v. *Industrial Commission of Utah,*
56 Utah 169, 189 Pac. 875.

and fifty cents; March, ten days, thirty dollars; April, three days, nine dollars; May, two days, six dollars; August, six days four hours, nineteen dollars and sixty cents; total earned, eighty-four dollars. That decedent left surviving, as dependents, his widow, Harriet Elizabeth Johnson, together with Clarence W. Johnson, Theron D. Johnson, and Claire Elizabeth Johnson, minors, and that the widow and applicant expended the sum of ninety-three dollars and fourteen cents for funeral expenses. That from the guardianship proceedings in the district court of Emery county, state of Utah, it appears that the widow, Harriet Elizabeth Johnson, was appointed guardian for the said minors, and as such was authorized to make election to take compensation in behalf of the minors. That in the work of the State Road Commission, of constructing and maintaining roads, the customary time of employment is five and one-half days per week, except as to the class of employés similar to decedent, whose duty it is to drag roads after storms, and that as to such employés their work comes only as would be required, as above stated.

"From the foregoing facts the commission concludes that the decedent came to his death as a result of an injury received by an accident arising out of or in the course of his employment, and that the dependents are entitled to compensation upon the basis of an·average weekly wage of seventeen dollars and thirty cents."

Plaintiff contends the evidence is insufficient to sustain the finding that deceased was seeking shelter at the time he was killed. The evidence tends to show that the deceased was employed by plaintiff in January, 1919, to drag a portion of the state road in Emery county; that his employment continued intermittently until September 4 of the same year, when he was instantly killed by a stroke of lightning. No one saw the accident, but his body was discovered shortly afterwards in a field adjacent to the road on which he had been working. The body of deceased was eight or nine rods from the road, and there is no controversy as to the cause of his death. The field in which the body was found was occupied by deceased in his lifetime, and contained an old house several rods distant from the road. The body of deceased was found between the road and the house. As to how the deceased came to be at that point is entirely circumstantial. In his work he had been driving two span of horses attached to a drag. The horses and drag were found near the road, several rods removed from where the deceased had evidently left them,

and the doubletree to which they were attached was broken. The evidence also shows that at the time of his death there was in that vicinity considerable thunder and lightning, with some rain, and manifestations of a heavier storm.

The circumstances above detailed are amply sufficient to justify the finding that the deceased was seeking shelter at the time of his death.   The question arises, "was seeking shelter," under such circumstances, such a departure from his work as to justify a conclusion that the accident did not arise in the course of his employment?

Upon this question the defendant calls our attention to a paragraph from a standard author which seems to be in point:

"It cannot be said that the employment is broken by mere intervals of leisure such as those taken for a meal.   If an accident happened at such a time there would be no break in the employment, even though the workman is paid by the hour for the time he is actually at work, especially where the accident occurs on the employer's premises, or about his property, unless the workman is doing something wholly foreign to his employment.   Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the Workmen's Compensation Acts, though they are only indirectly conducive to the purpose of the employment.   Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comfort or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshment, food, or fresh air, or to rest in the shade."   Honnold, Work Comp. p. 379 *et seq.*

See also, Vandoren, Work. Comp. 40, 41.

Plaintiff also insists that the accident causing the death of deceased was the "act of God," and not an accident within the meaning of the Industrial Act.   The contention is that an "Act of God" is by implication excluded.   Comp. Laws 1917, section 3112, as amended in Sess. Laws 1919, subd. 5, at page 157, is relied on.   It reads as follows:

"The words 'personal injury by accident arising out of or in the course of employment' shall include an injury caused by the willful act of a third person directed against an employé because

of his employment. They shall not include a disease except as it shall result from the injury."

Plaintiff's rule of construction, as applied to the language quoted, is a two-edged sword. The Legislature, while engaged in excluding certain things from the category of accidents, ought to have excluded the "act of God," if such was its intention. It expressly excluded diseases not resulting from the injury. *Expressio unius,* etc.

We not only feel justified in sustaining the finding that deceased was seeking shelter when the accident occurred, but likewise the legal conclusion that the accident occurred in the course of his employment and was one for which compensation should be allowed. We are of the opinion, however, that the accident did not arise out of the employment for the reason there does not appear to be any causal connection. This, however, in view of our present law, is immaterial. The insurer is liable whether the accident arose out of the employment or whether it arose in the course thereof. Comp. Laws 1917, section 3113, as amended by Sess. Laws 1919, page 158. We conclude therefore, that the deceased came to his death as the result of an accident received in the course of his employment, and that his dependents are entitled to compensation for the loss as provided by law.

The amount of compensation to be allowed is the difficult feature of the case. From the facts found the defendant reached the conclusion that the dependents were entitled to compensation upon the basis of an average weekly wage of seventeen dollars and thirty cents, and accordingly made an award of sixty per cent. of that amount, or ten dollars and thirty-eight cents per week for a period of 312 weeks, not to exceed in all the sum of three thousand two hundred thirty-eight dollars and fifty six cents.

The method of computation adopted by the defendant to ascertain the average weekly wage was to first ascertain the annual earnings, and divide that by fifty-two, the number of weeks in a year. For this purpose 300 was assumed to

be the number of working days in the year. This multiplied by three dollars, the daily wage, amounted to $900, which sum, divided by fifty-two, produced seventeen dollars and thirty cents as the average weekly wage. The question is, does the statute by which we are controlled justify such method of computation in the instant case? The findings show that the employment of deceased was intermittent; that the nature of the employment was such that he did not and could not have employment for 300 days in the year, either approximately or substantially. The findings themselves state the actual number of days the deceased was employed, the nature of the employment, and the conditions incident thereto. The number of days so found must have been all that was required in the employment. The total number of days of actual employment, according to the findings, was twenty-eight, and the aggregate earnings during a period of seven months, at three dollars per day, was only eighty-four dollars. In arriving at the conclusion it did, the defendant evidently adopted some legal theory not deducible from any provision of the statute. Comp. Laws 1917, section 3142, says:

"The average weekly wage of the injured person at the time of the injury shall be taken as the basis upon which to compute the benefits."

The statute furnishes no rule by which to compute the wage. We are compelled to blaze our own trail, and if possible construe the statute according to its plain meaning and intent. Undoubtedly the Legislature intended that the person injured, or his dependents in case of death, should be compensated for the loss upon some basis having a logical relation to his earnings in the employment. It certainly was not intended that, in every case where death resulted from accident in the course of employment, the dependents should be compensated as if the employment were continuous during all the working days of the year. No such conclusion is deducible from the language employed by the Legislature, and yet such, in effect, is the meaning of the statute as interpreted by the defendant in the case at bar.

The intermittent character of the employment was not taken into consideration in making the computation. The compensation allowed the dependents is just the same as might have been allowed the dependents of a deceased person who had worked for three dollars per day every working day in the year next previous to his death. The same method of computation was adopted by the defendant in a case recently decided by this court. *Uintah Power & Light Co. et al.* v. *Industrial Commission of Utah,* 56 Utah 169, 189 Pac. 875.

The controlling distinction, however, between that case and this is that in that case the employment was in its nature continuous throughout the year and for every working day in the year. Having found the daily wage, which was four dollars, this amount multiplied by 300, the **3** assumed number of working days in the year, gave a result of $1,200 as the annual earnings. This divided by fifty-two, the weeks in the year, determined the average weekly wage at the time of the injury. The rule adopted by the defendant in that case is reasonable and therefore permissible in every case where the employment is substantially continuous, even though the deceased is killed by an accident immediately after entering the employment.

But where, as in the instant case, the employment in its nature is not continuous, but dependent upon certain conditions indeterminable in advance, we know of no rule by which to determine the average weekly wage at the time of the injury except by adopting a method of **4** computation which gives effect to the word "average," as the same appears in the statute. It is the duty of the court to give effect to every word if possible. Unfortunately, precedents are of little or no avail in the present case. All of the adjudicated cases, as far as we have been able to examine them, are controlled by statutes almost, if not entirely, dissimilar to our own, as relates to the question now under consideration. Nearly every statute we have examined lays down specific rules for determining the basis of computation. Most of them use the words "average weekly wage" as the basis for computation, but they also prescribe the formula

by which the average weekly wage is to be determined. The rules generally relate to employments continuous in their nature, and in such cases the rules quite frequently are substantially similar to the method adopted by the defendant in the present case. For instance, the number 300 is generally used as the number of working days in the year. If the work is substantially continuous throughout the year, this number is ordinarily used. We have carefully examined all of the cases called to our attention by defendant's counsel in their exceedingly able brief, but find no case which justifies the method adopted by defendant in a case of this kind. The statutes of many of the states as they relate to this particular question are found in the note to 9 N. C. C. A., commencing at page 531. Defendant cites the following cases in which many of the statutes are considered: *In re Behrens*, 188 App. Div. 66, 176 N. Y. Supp, 28; *In re Prentice*, 181 App. Div. 144, 168 N. Y. Supp. 55; *Riley* v. *Motor Co. et al.*, 199 Mich. 233, 165 N. W. 745; *Robbins* v. *Original Gas Co. et al.*, 191 Mich. 122, 157 N. W. 437; *Erickson* v. *American Well Works*, 196 Ill. App. 346; *Fairchild* v. *Pennsylvania Railroad*, 170 App. Div. 135, 155 N. Y. Supp. 751; *Centlivre Beverage Co.* v. *Ross* (Ind. App.) 125 N. E. 220; *Interstate Iron & Steel Co.* v. *Szot* (Ind. App.) 115 N. E. 599; *Littler* v. *Geo. A. Fuller & Co.*, 223 N. Y. 369, 119 N. E. 554. None of these cases are in point as far as relates to the facts of the instant case, but many of them are instructive and well worth reading.

The last case cited above is a New York case, and it suggests a reasonable rule for computation in a case of this kind under a statute such as ours. The commission in that case awarded compensation on the basis of 300 times the daily wage reduced to weeks. The facts were the employment only furnished work for about thirty weeks in a year. In reversing the award the court said:

"If the nature of the employment does not permit steady work during substantially the whole of the year the annual earning capacity of the injured employé *in the employment* is the proper basis of compensation. Section 14, subd. 3. The true test is this: What were the average weekly earnings, regard being had to the known

and recognized incidents of the employment, *including the element of discontinuousness.*" (Italics ours.)

The opinion refers to an English case (*Anslow* v. *Cannock Chase Colliery Co.*, L. R. App. Cas. 1909). The following excerpt from the opinion of Lord Loreburn is illuminating:

"The question is in regard to the way in which the average weekly earnings of a workman shall be computed in a case in which a normal and recognized incident, of his work was fourteen weeks' stoppage and two weeks of general holidays during the year.

"The object of the act, broadly stated, is to compensate a workman for his loss of capacity to earn, which is to be measured by what he can earn in the employment in which he is, under the conditions prevailing therein, before and up to the time of the accident. If he takes a holiday and forfeits his wages for a month, then that does not interfere with what he can earn. It is only that for a month he did not choose to earn. But if it is a part of the employment to stop for a month in each year, then he cannot earn wages in that time in that employment, and his capacity to earn is less, over the year.

"I agree with what the learned Master of the Rolls says in his judgment when he uses the following language: 'In my opinion the true test is this: What were his earnings in a normal week, regard being had to the known and recognized incidents of the employment? If work is discontinuous, that is an element which cannot be overlooked.' "

The English Workmen's Compensation Act 1906, under which the opinion just quoted was rendered, as far as applicable here, reads as follows:

"(2) For the purposes of the provisions of this schedule relating to 'earnings' and 'average weekly earnings' of a workman, the following rules shall be observed:

"(a) Average weekly earnings shall be computed in such manner as is best calculated to give the rate per week at which the workman was being remunerated. Provided that where, by reason of the shortness of the time during which the workman has been in the employment of his employer, or the casual nature of the employment, or the terms of the employment, it is impracticable at the date of the accident to compute the rate of remuneration, regard may be had to the average weekly amount which, during the twelve months previous to the accident, was being earned by a person in the same grade employed at the same work by the same employer, or, if there is no person so employed, by a person in the same grade employed in the same class of employment and in the same district."

As to the meaning of the term "average weekly earnings," Halsbury, L. C., in *Lysons* v. *Knowles & Sons*, Ltd. (1901) A. C. 79, at page 87, said:

"I think it was in that popular sense, taking one day with another, that the Legislature used those words, and I think it is what everybody would understand by 'average' that his earnings were so much—not his agreed earnings by contract, there it would be definite that if a man was employed only at irregular intervals or at irregular amounts you were to get at what the average was by putting them together and striking an average so as to afford a test of the weekly sum to be paid."

In *Perry* v. *Wright*, [1908] 1 K. B. 441, Fletcher Moulton, L. J., expressed the opinion, at page 456, that—

"The term 'average weekly earnings' signifies broadly the average earnings which the workman would make in a normal week if employed on the terms prevailing before and up to the time of the accident."

The above excerpts, both as to the statute and opinions cited, are found in Knowles, Workmen's Compensation, from page 189 to page 214, inclusive.

We have made a somewhat extended review of the English statute and cases for the reason that the statute appears to be, to some extent, in principle similar to the statute of this state as far as average weekly earnings are concerned. There seems to be no formula given by which the earnings may be determined, but the statute is suggestive of a method, and is therefore instructive to the officer or officers charged with the duty of administering the act. It will be noted the statute says, "average weekly earnings shall be computed in such manner as is best calculated to give the rate per week at which the workman has been remunerated."

*In re Rice,* 229 Mass. 325, 118 N. E. 674, Ann. Cas. 1918E, 1052, is of special interest because the employment was intermittent, and the conditions, to some extent, were similar to those existing here. The applicant was a schoolgirl, who, after school hours each day, worked three hours for five days in a week, and all day Saturday in a weaving business, and earned approximately $3 per week. The accident board found that a person working as a weaver full time, six days

a week, would average $7.50 a week, and allowed that sum as the basis of compensation. The Supreme Judicial Court, on appeal, held that the amount of compensation to be awarded under the statute was to be determined not by what the employé is *capable of earning,* but by what was *actually earned.* It also held that, if there was such an employment as that of "spare weaver," similar in hours of service, kind of work, and requirements of skill to that of applicant during her term of employment, that might be used as a basis for determining the compensation to be awarded under the statute. Finally, the court, in effect, held that the words "average weekly wages," under the statute, should be interpreted in their common and ordinary sense, and should be computed by dividing the total amount earned by the number of weeks of employment. It will thus be seen that the Supreme Judicial Court of Massachusetts practically applied the English rule.

In *Bartoni's Case,* also a Massachusetts case, appealed from the Industrial Accident Board to the Superior Court (225 Mass. 349, 114 N. E. 663, L. R. A. 1917E, 765), it was held that the average weekly wages of a workman employed in a granite quarry, who, during the year preceding his injury, did not work for about thirteen weeks of the year by reason of inclement weather that prevented work in a quarry, are to be computed by dividing the amount of his pay for the year preceding the injury by the number of weeks that he actually worked. The governing words of the statute, as stated by the court at page 351, are as follows:

"'Average weekly wages' shall mean the earnings of the injured employé during the period of twelve calendar months immediately preceding the date of injury, divided by fifty-two; but if the injured employé lost more than two weeks' time during such period, then the earnings for the remainder of such twelve calendar months shall be divided by the number of weeks remaining after the time so lost has been deducted."

Following this quotation of the statute relating to average weekly wages, the opinion in the Bartoni Case says that this definition is significantly unlike any provision in the English act. The writer has some difficulty in noting the

wide distinction suggested by the Massachusetts court, but the difference of opinion is not important.

It is contended by defendant's counsel with much force and considerable eloquence that, in computing the compensation to be awarded the dependents of an employé whose death was caused by accident, the earning capacity of the deceased, and not the amount previously earned, should constitute the basis of compensation. If by "earning capacity" is meant what the employé could have earned as the business was carried on, including the element of discontinuousness incident to the nature of the employment, we have little or no fault to find with the contention; but if by "earning capacity" is meant what the employé might earn on the assumption that he worked full time, or for three hundred days in the year, we cannot agree with the contention as applied to a case of this kind. Whenever the term "earning capacity" is used in cases arising under the Workmen's Compensation Acts it will generally be found that it has reference to earning capacity in the particular employment as it is carried on. When we consider the fact that no person can possibly have an earning capacity in a particular employment greater than the opportunities afforded by that employment, we obtain a clearer conception of what is meant by "earning capacity," as the term is used in this class of cases. To say that a person had an earning capacity of three dollars per day for 300 days in the year, and that therefore his compensation, or that of his dependents, should be computed on the basis of $900 per year, or $17.30 per week, where the employment in which he was injured was intermittent and could only run for a small fraction of the time, is a manifest paradox. Such a contention has no logical basis upon which to stand. We must therefore find some other method of computation in the present case more in accord with legislative intent.

Counsel for both parties in the case have injected into the discussion theories relating to the question of insurance. Plaintiff contends that the insurance fund as collected and maintained is not sufficient to pay full-time compensation in

a case of this kind, where the employment is intermittent, and where the employé had employment for only a small portion of the time. Defendant, on the other hand, insists that the fund is collected and maintained so as to allow full-time compensation for every death by accident which may occur in the course of the employment, whether the employment be intermittent or continuous. It is sufficient to say that, as far as the present case is concerned, the theories advanced are academic. There is nothing in the record of the case to justify the court in giving such theories serious consideration. We are bound by a statute which says: "The average weekly wage of the person injured, at the time of the injury shall be taken as the basis upon which to compute the benefits." The difficulty confronting the court is to construe that statute so as to give it effect in the instant case. It is impossible to construe it to mean exactly what it says. An average cannot be computed by means of a single factor. The ordinary meaning of the word implies that more than one factor must be considered. Webster defines the word, "A mean proportion, medial sum or quantity, made out of unequal sums or quantities." The Legislature evidently intended that the weekly wage should be computed with reference to some period of time, including the date of the injury. It intended that the wage at the time of the injury should be considered in connection with wages previously earned. For how long previous, the statute is silent. The Industrial Commission, and others upon whom the duty may be imposed, are left without a guide. They must determine the question as best they can. In the absence of a statutory formula we know of no better rule than that expressed in the English statute, supra: "The average weekly earnings shall be computed in such manner as is best calculated to give the rate per week at which the workman was being remunerated." We have shown, by the English decisions referred to, the method of computation adopted in that jurisdiction. If the workman is employed at irregular intervals or at irregular amounts, the wage is determined by dividing the aggregate by the number of weeks. In this case the

defendant, in pursuance of a stipulation by the parties since the case was submitted, has furnished the court with a detailed statement of the days in different weeks covered by the employment in which the deceased was employed. Every period of seven days within which deceased did any work and the wages therefor are given. The period of employment commenced the 26th day of January, 1919, and continued intermittently until September 4th, the day of his death. The number of weeks covered by the intermittent employment was thirty-one. The total amount earned was $91.50. This amount divided by thirty-one gives the sum of $2.95 as the average weekly wage. The fact will be noted that this method of computation takes into consideration not only the weeks in which he did some work, but also the weeks he did not work at all. This we conceive to be the spirit and meaning of the statute. The purpose evidently was to pay to the dependents of the deceased employé as compensation sixty per cent. of his average weekly earnings as the same may be calculated up to and including the date of his injury. This we have endeavored to do. It may be contended, however, that the weeks in which no work was done should not be considered in the computation—that only the weeks in which he did some work should be considered. Let us see what the result would be if that method were adopted. The number of weeks in which the deceased did some work was eighteen. Ninety-one dollars and fifty cents, the aggregate sum earned, divided by eighteen, gives as a result $5.08. This is certainly more liberal to the dependents of the deceased, but is it right? Will it stand the test of reason and common sense? Let us suppose that the deceased commenced work on the 26th day of January, and worked continuously a full week of six days at three dollars per day. Let us suppose, further, that from then on to the 28th day of August he had no work, but on that day it rained. On the 29th he resumed work, and continued for six days until the moment of the accident. The amount earned would be thirty-six dollars, the number of weeks two, and the average weekly wage eighteen dollars. The effect would

be full compensation for the dependents of an employé who had employment for only two weeks in seven months and a fraction, the periods of employment being practically seven months apart. Under such method of computation sixty per cent. of the average weekly wage would amount to more than the entire wages earned in the employment by the employé when living. We do not believe the statute controlling in this case is susceptible of such construction. The question is, what did the deceased earn in the employment during the period of seven months and nine days next previous to his death? That divided by the number of weeks within that period must of necessity determine the average weekly wage under the Utah statute or else the statute has no meaning at all. If the average weekly wage in this kind of a case could be determined by taking the average weekly wage of all employés in the district in the same grade of employment, as provided in the English statute above quoted, the writer is of the opinion a more satisfactory result could be achieved; but that is a matter for the Legislature and not for the court. The minimum compensation in case of death is fixed by statute at $2,000, so that in any event all that can be said of our decision in the present case is that where the employment is intermittent it establishes the rule by which the average weekly wage of the employé under the act may be determined.

The conclusions of the defendant commission are not supported by the findings, and for that reason the award is annulled and set aside, with directions to defendant to proceed in accordance with the views herein expressed.

CORFMAN, C. J. and WEBER, J., concur.

FRICK J.

I concur. I am free to confess, however, that I have had some difficulty in arriving at what to my mind seems a satisfactory conclusion in this case. After carefully considering the text of our Workmen's Compensation Act, and

after comparing its provisions with those of other similar acts, and upon mature reflection respecting the controlling purpose of such acts, I can see no escape from the conclusion reached by my associate, Mr. Justice THURMAN. In this case it is conceded by both sides that the regular course of employment of the deceased was necessarily irregular and intermittent; that is, that the work he was employed to do was necessarily such that he could be employed only a portion of his time. It is also conceded that when he was not doing road work he was engaged in agricultural labor on his farm, an employment which is not embraced within the Workmen's Compensation Act. Keeping in mind, therefore, that in case of injury the purpose of the act is to compensate the injured employé for loss of time, and in case of his death to compensate those who are dependent upon him for support for the actual pecuniary loss they will sustain by reason of being deprived of his earnings, it follows, as a necessary corollary, that the amount of compensation to either the injured employé, or, in case of his death, to those who are dependent upon him, ordinarily cannot exceed the amount the deceased earned in the particular employment in which he was engaged at the time of his death. Under such circumstances it is of the utmost importance to keep in mind two things: (1) That the compensation act does not cover the ground of old-line accident insurance; and (2) that it is the actual amount earned in the course of the employment, and not the earning capacity of the deceased, which constitutes the basis of compensation under the act. By what is actually earned is meant the wage that is paid to the employé in the course of his regular employment. If, therefore, the employment is continuous, the days that he may "lay off," even though voluntary, are not deducted when the average weekly earnings are ascertained. If, however, as here, the employment in its very nature is intermittent, and the employé necessarily can earn wages only a part of the time, then the average weekly wage thus earned during the whole period of the employment, or for at least such a length of time as will give the true average, must be taken

as the basis for computing the amount that should be allowed under the statute. In order, therefore, to arrive at a just result it is necessary to ascertain the average weekly wage the employé earned in the regular course of his employment, ascertained as just stated, since that is what those who are dependent upon him for support are deprived of in case of his death, and that is what the statute contemplates shall be awarded to them during the period of time fixed in the statute. That such is the purpose of the statute is manifested in various ways by its language. The provision respecting the basis of compensation, as well as the provision which makes the amount of the pay roll the basis for contributions to the fund from which the compensation is paid, clearly indicate that such is the purpose of the act. Where the employment is regular and continuous, and the rate of wage is fixed, there can be no difficulty whatever in arriving at a just result. Where, as here, however, the regular employment is intermittent, the only correct method of arriving at a just result is the one pursued by Mr. Justice THURMAN in his opinion. The reason why, under such circumstances, the earnings for at least the period of time before stated must be reduced to a weekly average, is not hard to understand. Indeed, it is quite obvious. For example, if the regular course of the employment is intermittent, as here, and the employé works only one-third or less of the time covered by his employment, then his average weekly wage is necessarily less than what he actually earned in the particular week or on the particular day he was accidentally killed. In view, therefore, that the compensation which is awarded in each case under the statute is for a continuous weekly allowance, and not only for the one-third or less of the time the employé may have been actually engaged at work, his earnings must be averaged for the whole number of weeks, and in that way the correct amount which the statute assumes he contributed to those who were dependent upon him for support must be ascertained. If the compensation under the circumstances just stated, were based upon what the employé actually earned during the week or on the

day he was killed, the dependents would receive the sum equal to three or more times the amount they were actually deprived of; that is, three or more times the amount he, in contemplation of the statute, could have contributed to them during the time he was employed.

If the act were intended to take the place of ordinary accident insurance, or if it were intended to cover losses other than those which are merely pecuniary, the case would be different.  In this connection it must always be kept in mind, however, that where the work is regular and continuous, or substantially so, and the wages of the employé have been increased from time to time, then these circumstances must be considered when the amount of compensation to be awarded is determined.  In each case the evidence relating to those matters should, however be reflected in the findings, and be carefully considered in determining the amount to be allowed as compensation, and the statutory provision in that regard should be carefully observed.

The method pursued by the Industrial Commission in fixing the compensation in this case, as clearly pointed out by Mr. Justice THURMAN, in my judgment is not only unsound in principle, but is in direct conflict with both the letter and the spirit of our statute, in that the compensation allowed is upon a basis as though the deceased worked all of the time when in fact he worked only a small part of the whole time during which he was employed in road work; and thus the amount awarded is far in excess of the earnings of the deceased, and hence far in excess of what his dependents could have received from the earnings derived from the work in which he was engaged.  Moreover, the dependents in this case are allowed compensation for the time in which the deceased was engaged in agricultural work, which is expressly excluded from the act.  If therefore, the deceased had been killed while repairing his farm, or while doing something else on the farm, his dependents would have been remediless.

It is true that by reason of the death of the deceased his dependents are deprived of his entire earning capacity.

That, however, is a misfortune not covered by the statute (except as it may be covered by the minimum amount allowed) and therefore cannot be considered here. It is manifestly our duty to apply the law as we find it, and, in case any other tribunal, board, or commission over which the law requires us to exercise jurisdiction misinterprets or erroneously applies the law, it is our duty to correct the error in case the proceedings are brought here for review.

GIDEON, J. (concurring in part).

The facts surrounding the employment of the deceased by the State Road Commission and the terms of the employment are not in dispute. The duty of the deceased was to drag or level the road after storms, and he was to determine the necessity for such work. In the very nature of the case his employment was intermittent. He might be required to do work once or oftener in one week, and again it might not be necessary to do any work for a period of several weeks. The record in this proceeding discloses that that is just what happened. It seems to be established beyond controversy that of the thirty-one weeks between the date of the first employment and the date of death there were only eighteen weeks in which the deceased actually did any work. Mr. Justice THURMAN concludes that in arriving at the average weekly wage the court should take into consideration the full number of weeks from the commencement of his employment to his death. I can see no reason why that particular arbitrary rule should be adopted. Clearly the deceased was not an employé of the State Road Commission except as such times as he was actually engaged in the work. As indicated, there were weeks when he was not so employed. It will not be contended by any one that, if deceased had been struck by lightning during some week when he did no work for the road commission and while engaged at farm labor, he would be entitled to compensation for such accident. The rule should work both ways. If he was an employé during all of those weeks to the extent that that time must be

considered in arriving at his average weekly wage, it would seem, a fortiori, that he was therefore such an employé as would be entitled to compensation in the event of accident. The rule adopted appears to be unnecessarily harsh upon both the employé and his dependents and contrary to the general spirit of the act. In many cases it would defeat the very purpose of the act, which is to compensate the widow and other dependents for the pecuniary loss sustained through the death of their provider. It is easy to perceive various kinds of intermittent employment where the employé is called upon to perform labor one week, and probably is not again called upon for several weeks. In such cases, if the entire number of weeks between the first employment and the time of the accident is to be used as a divisor in determining his average weekly wage, it might, and would likely result in reducing such average weekly wage to a sum trifling in comparison with what the employé was actually earning, or capable of earning by his labor. I cannot conceive that such was the intent of the Legislature. A more rational rule, it seems to me, since it is absolutely necessary to determine the average weekly wage, is to count the number of weeks during which he actually worked one or more days. Such, as I understand, is the position of the manager of the State Insurance Fund, as outlined in his letter addressed to the Industrial Commission under date of January 15, 1920.

The argument is advanced that to allow the applicants in this case full compensation as fixed by the commission would result in giving to the dependents (applicants) much more than the deceased would have received from the particular employment if the accident had not occurred and the employment had continued. If that element is to be considered in determining the amount of compensation to be awarded, then the award of the commission in the recent case of *Amalgamated Sugar Co. et al.* v. *Industrial Commission*, 56 Utah 80, 189 Pac. 69, should not have been affirmed. The deceased there was employed by the Amalgamated Sugar Company at four dollars per day, or twenty-four dollars weekly.

It is a matter of common knowledge that the duration of the operating season of sugar factories in this state is approximately twelve weeks. The total wage that the deceased in that case would have earned, therefore, had he worked the full season, would have been approximately $288. Notwithstanding that fact, his dependents were awarded an amount exceeding what his entire wages would have been from that employment had he continued therein for more than fifteen years.

While I concur in the result, I do not agree with the method suggested by Mr. Justice THURMAN in determining the average weekly wage in employments of this kind.