## MARLAND et al. v. STATE INDUSTRIAL COM. et al.

No. 22151. Opinion Filed Nov. 10, 1931.

Keaton, Wells, Johnston & Barnes and B. C. Davidson, for petitioners.

Benjamin E. Cook, for respondents.

CLARK, V. C. J. This is an original action commenced in this court by petitioners to review an award of the State Industrial Commission, made and entered on the 12th day of February, 1931, wherein respondent J. C. Forrester was found to have sustained an accidental injury arising out of and in the course of employment on the 29th day of April, 1927, while engaged in a hazardous occupation, and that his average daily wage was $4 per day, and that by reason of the accidental injury he has been permanently totally disabled from the performance of his ordinary manual labor since April 29, 1927, and awarded respondent 500 weeks' compensation at the rate of $15.39 per week, less one week and three days' compensation paid and less $71 earned by the respondent.

Petitioners submit in their brief their contentions under five propositions as follows:

"(1) The order of October 6, 1927, became final under rule 30 and further proceedings were beyond jurisdiction of Commission.

"(2) That at the time of the injury, the respondent was engaged in a private enterprise in quarrying stone for the improvement of his country estate, and was not engaged in an enterprise for 'pecuniary gain' within the meaning of the compensation act and the cause is not within the jurisdiction of the Commission.

"(3) The source of the disability was not in the accident. The disability did not have its origin therein, but in natural causes and disease.

"(4) The evidence does not justify a finding that claimant was 'permanently totally disabled' since April 29, 1927.

"(5) The rate of compensation of $15.39 per week for 500 weeks, less certain deductions, was not the proper basis or rate provided by law in such cases. It is not a case of specific injury under section 7290. It is a case of temporary partial disability, or at most 'permanent partial' and the rate of compensation is 66⅔ per cent. difference between present and former earning for a period not to exceed 300 weeks."

The first contention of petitioners is without merit. The first award was made and entered on the 6th day of October, 1927, and the award was set aside by the State Industrial Commission on the 26th day of October, 1927, being within 30 days from the date of the award; and no appeal was taken from the order vacating the award and the same became final, and after further proceedings therein another award was made and entered by the Industrial Commission on the 2nd day of March, 1928, and from which last award petition for review was filed in this court, and the cause was reversed with directions to the Industrial Commission to vacate and set aside said award and permit claimant, if he so desired, to offer further testimony in support of his claim, and also grant claimant a hearing on his application to correct the transcript theretofore made at previous hearings in this cause, which decision by this court is

found in the case of Forrester v. Marland, 142 Okla. 193, 286 P. 302.

As to the other contentions of petitioners, there was competent evidence introduced, in substance as follows:

That respondent commenced work for E. W. Marland in August or September, 1926, and continued in his employment until and including April 29, 1927. That his average wage was $4 per day, and that he was about 46 years of age at the time of last hearing. That his work consisted of digging ditches, carrying lumber and timber, bursting rock, loading rock, using an air gun which weighed about 140 pounds, and other general heavy work, and that the last work he did was in the stone quarry.

That petitioner, Marland, operated a quarry and a stone crusher, and that the stone crusher was operated as a commercial operation and crushed rock was sold therefrom. That the quarry and the crusher were in one rather large hole, and that the ledge of stone runs around a quarter of a mile. That the crushed rock came from the stone ledges, the same place where the slab came from, and the same kind of stone that went into the slab went into the crushed rock; that it all came out of the same ledges, and all the same quarry. That rock was sold out of the quarry and that money was received therefor.

That on the 27th of April, 1927, respondent was assisting in carrying a flat roof. That there were four men on one end of it and respondent was on the other end alone. That some one of the men stumbled or dropped the end of the roof and when it jerked it twisted his neck out of joint and tore him down.

That the roof that was being moved on the 27th of April was to shed the trucks, and that the trucks were used in the crushed rock department and in the slab department, and were in connection with the quarry.

That respondent immediately complained to a fellow helper and to the foreman; that he sat around the rest of the day and reported to work the next day and during the 28th of April he sat down on the ground and tried to chop a few stumps and put in his time; that on the next day, the 29th of April, he reported back to work and was sent up on the bluff to load big rocks in a wagon, and he started to pick up a rock weighing 50 or 60 pounds, and he picked it up and threw it onto the wagon, and he was knocked unconscious and it seemed like to him that his ear drums tore loose and he felt a hurting in his back, and the next thing he remembered was that he was being put in

a car, and was taken to Marland, Okla., for first aid, and the record discloses the different treatments and examinations that the respondent has received from that time to the time of the hearings.

Respondent testified that he has suffered pain continuously since the injury, and that the pains are in his neck and back, and that there is a sore spot in his head and sometimes in his right side, and when he tries to walk he suffers pain; that he is unable to sleep more than an hour of a night. That since the injuries the record discloses that respondent has endeavored to do light work to make a living, but that he could not get around to make a living.

The evidence further discloses that before the injuries respondent had no pain in his back or head, and was an able-bodied man, able to do and did do hard manual labor and had been in good health.

Dr. McBride testified that he had examined the respondent on September 24, 1927, and on June 5, 1930, and that respondent has a condition known as osteoarthritis of the spine, and that he is not able to do manual labor, and that after it has advanced this long you cannot arrest the disease; often relieve them of pain and make them much more comfortable, but you cannot relieve the bone deposits and stiffness in the spine; and taking into consideration the history of the case and his examinations and findings, that the disability that respondent was suffering with was caused by the injury received on April 27, 1927; and testified on re-cross examamination:

"Q. You mean by your answer, doctor, that this condition was aggravated by his alleged accident on about April 27, 1927? A. Yes, sir."

There is further evidence in the record showing that respondent had osteoarthritis of the spine, and that X-ray pictures showed it, and that a severe blow or strain in that region would aggravate it possibly in proportion to the amount of injury he had.

Dr. McBride further testified:

"Q. Doctor, is this man able to do manual labor at this time? A. No. sir"

—and further testified that further treatments as shown by the evidence would do respondent some good, make him more comfortable, but doubted if it would ever cure him to the extent where he could do a great deal of manual labor.

There is a conflict of evidence as to whether the disabilities of which respondent now complains were due to the strain or injury or due to infection or aggravated by

the strain or injury; and also as to whether or not respondent is totally disabled.

The question as to whether respondent was permanently totally disabled as the result of an accidental injury covered by the Workmen's Compensation Law is a finding of fact, and the finding of the Industrial Commission thereon will not be disturbed by this court on review where the same is supported by competent evidence, and we are of the opinion that there is competent evidence supporting the findings of the Industrial Commission herein.

On the question presented by petitioners as to respondent's condition being due to a previous infection, this court in the case of Shell Petroleum Corporation v. Gable Moore, 147 Okla. 243, 296 P. 390, in the second paragraph of the syllabus said:

"Where respondent, having a pre-existing arthritic condition of the back which at some uncertain and undetermined time in the future might cause him to become totally incapacitated, was injured by a heavy piece of lumber falling upon him, resulting in immediate temporary total disability, held, that he was entitled to full compensation for temporary total disability"

—which followed the holding in the cases of Guyer v. Equitable Gas Co. (Pa.) 123 Atl. 590; Idaho Central R. Co. v. Industrial Com. of Utah (Utah) 267 P. 785; Sunnyside Mining v. Industrial Commission (Ill.) 151 N. E. 238; Warlop v. Western Coal & Mining Co. (C. C. A. 8th Circuit) 24 Fed. (2nd) 926.

The findings of the Industrial Commission that respondent was permanently totally disabled being supported by competent evidence. we are of the opinion that respondent's compensation should be based upon 500 weeks, under subdivision 1 of section 7290, C. O. S. 1921, as amended by chapter 61, sec. 6, Session Laws 1923.

The award of the State Industrial Commission is affirmed.

LESTER, C. J., and CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. RILEY, HEFNER, and McNEILL, JJ.. absent.

Note.—See under (2), (3) annotation in L. R. A. 1916A, 266; 58 A. L. R. 1392; 28 R. C. L. 828, 829; R. C. L. Perm. Supp. u. 6254; R. C. L. Pocket Part, title Workmen's Compensation, § 116.