MORRISON-MERRILL & CO. et al. v. INDUSTRIAL COMMISSSION OF UTAH et al.

No. 5337. Decided January 27, 1933. (18 P. [2d] 295.)

*Bagley, Judd & Ray* and *A. H. Nebeker*, all of Salt Lake City, for plaintiffs.

*Joseph Chez*, Attorney General, and *L. A. Miner*, Special Deputy Attorney General, for defendants.

ELIAS HANSEN, J.

The defendant Industrial Commission awarded the defendant Hyrum Walton compensation at the rate of $13.85 per week for a period of 28 4/7 weeks on account of temporary total disability resulting from an injury which Mr. Walton received while in the employ of the plaintiff Morrison-Merrill & Co. The plaintiff Aetna Life Insurance Company was the insurance carrier of Morrison-Merrill & Co. at the time Mr. Walton was injured. Plaintiffs prosecute this proceeding to review the award. The sole ground of their complaint is that the weekly compensation awarded by the commission is excessive. They contend that Mr. Walton was, during his disability, entitled to receive only $6.64 per week and that the award of $13.85 per week is contrary to law. The facts out of which this controversy arose are not in dispute. The evidence together with a stipulation of the parties establish these facts: Mr. Walton was injured July 7, 1931, while engaged in his employment with Morrison-Merrill & Co., a corporation, subject to the provisions of the Industrial Act. At the time of his injury and prior thereto when in the employ of Morrison-Merrill & Co. he

was paid $4 per day. Morrison-Merril & Co. operated its business regularly on the basis of 5½ days per week. Prior to his injury Mr. Walton worked only at intervals for Morrison-Merrill & Co. He also worked for others, but the record is silent as to the basis upon which he was paid when employed by such others. Between January 3, 1931, and July 7, 1931, both dates inclusive, he earned from Morrison-Merrill & Co. the sum of $61.60. During the same period of time he earned a total of $115 from other employers making a total sum of $176.60 earned during the six months immediately preceding his injury. It will thus be noted that during the 26 4/7 weeks immediately preceeding his injury Mr. Walton earned an average of $6.64 per week. Plaintiff contends that under a proper construction of our Industrial Act Mr. Walton was entitled to an award of compensation based upon such average earnings and no more. In making the award it is evident that the commission did not take into consideration the fact that Mr. Walton's employment was not continuous. It arrived at the amount of the award by multiplying $4 per day by 300 by 60 per cent and dividing the product thus obtained by 52. The question thus to be determined is: Did the commission under the facts disclosed by this record use the right method in arriving at the amount of compensation that should be awarded? The provisions of the Industrial Act touching the question here presented for determination are contained in Laws of Utah 1921, c. 67. It is there provided:

Sec. 3112. "The following terms as used in this title shall be construed as follows: * * *

"8. The term 'average weekly earnings' shall mean the average weekly earnings arrived at by rule provided in Section 3142."

Sec. 3137. "In case of temporary disability, the employee shall receive 60 per cent of his average weekly wages so long as such disability is total, not to exceed a maximum of $16 per week, and not less than a minimum of $7 per week; provided that where the wage earned at the time of injury is less than $7 per week; then in such cases the amount of wages earned should be the amount of compensation to be paid; but in no case to continue for more than six years from the date of the injury, or to exceed $5000."

Sec. 3142. "The average weekly wage of the injured person at the time of the injury shall be taken as the basis upon which to compute the benefits, and shall be arrived at and determined in the following manner, to wit: employment shall mean pursuit in the usual trade, business, or profession of the employer. Five and one-half or six days employment shall mean pursuit in the usual trade, business, or profession, the usual operation of which is six days or less per week. Seven day employment shall mean pursuit in the usual trade, business or profession, the usual operation of which is seven days per week. The average weekly wage shall be determined as follows:

"1. Determine the contract of hire existing at the time of the injury, whether upon annual, month, week, day, hour, or piece basis;

"2. Determine whether the employment is operated on a five and one-half, six or seven day basis.

"3. Determine daily wage as follows:

"(a) If the wage is on an annual basis, and the employment is seven days per week, divide the annual salary by 364 days. Result—daily wage. If the employment is five and one-half or six days per week, divide annual salary by 312 days. Result—daily wage.

"(b) If wage is on monthly basis, multiply monthly salary by 12 and proceed as above (a) to determine daily wage.

"(c) If the wage is on a daily basis no rule is required.

"(d) If the wage is on an hourly basis, multiply pay per hour by the number of hours said employment regularly operates, or if operation is not regular, use eight hours as a day.

"(e) If the wage is on piece basis, use the average daily earnings for a reasonable period in which employment has been regular. Divide the amount earned by the number of days worked in such period. If the duration of employment has been too short to determine as above, then use the wage of an average employee, taking into consideration the experience of said employee, and determine as above, (a).

"(f) If the wage is on part-time basis, and the employment is regular, the wage shall be extended to full time basis, or that wage the injured would earn if working full time in such employment, and determine as above (a).

"4. To determine average weekly wage, if the employment is five and one-half or six days per week, multiply the daily wage, as determined by the foregoing method, by 300 and divide by 52. If the employment is seven days per week, multiply the daily wage, as determined above, by 332 days and divide by 52.

"5. To determine weekly compensation, let D represent daily wage.

"If 5½ or 6 days of employment per week— $\dfrac{D \times 300 \times 60}{52}$ =weekly compensation.

"If 7 days of employment per week— $\dfrac{D \times 332 \times 60}{52}$ = weekly compensation.

"6. To determine daily compensation, divide weekly compensation by seven."

Prior to the amendment of the Industrial Act in 1921 the Legislature had not provided any rule for the determination of compensation under a state of facts such as are presented in this case. The only guide for fixing compensation was contained in Comp. Laws Utah 1917, § 3142, wherein it was provided that "the average weekly wage of the injured person at the time of the injury shall be taken as the basis upon which to compute the benefits." In construing the statute as it then was, this court held that where the employment is continuous the average weekly wage "may be computed by multiplying the average daily wage by 300 and dividing by 52; but, where the employment is intermittent, the average weekly wage is determined by dividing the aggregate amount earned by the number of weeks, including the weeks in which no work was done." *State Road Commission* v. *Industrial Commission*, 56 Utah 252, 190 P. 544. The foregoing quotation is taken from the syllabus. It reflects the conclusion reached by this court in that case. Other cases touching the construction that should be given section 3142 before it was amended, and which are in harmony with the conclusions reached in the case of *State Road Comm.* v. *Industrial Comm.*, supra, are: *Uintah Power & Light Co.* v. *Industrial Comm.*, 56 Utah 169, 189 P. 875; *Geo. A. Lowe Co.* v. *Industrial Comm.*, 56 Utah 519, 190 P. 934; *Utah Fuel Company* v. *Industrial Comm.*, 59 Utah 46, 201 P. 1034. In the case of *Bamberger Electric R. Co.* v. *Industrial Comm.*, 59 Utah 257, 203 P. 345, an employee was employed by two employers. He spent part of his time for each employer. While engaged in the performance of his

duties for one of his employers, he sustained an injury resulting in his death. It was held that his dependents were entitled to compensation computed upon the basis of the aggregate amount the deceased received from both employers but should be paid by the employer for whom he was working at the time he was killed.

All of the foregoing cases involved injuries which occurred prior to July 1, 1921, when the amendment prescribing the basis for computing compensation, heretofore quoted in this opinion, took effect. It will be noted that plaintiffs contend that the basis which should be used in computing compensation that should be paid to Mr. Walton in this case is the basis which prevailed in this jurisdiction prior to the amendment of 1921. Since the amendment of 1921 this court has had before it the question of what basis should be used in computing compensation. *Millard County* v. *Industrial Commission*, 62 Utah 46, 217 P. 974. In that case the sheriff of Millard county employed Floyd L. Rose to assist in the apprehension and arrest of a prisoner who had escaped from the county jail. Rose had been engaged in that work for a period of four days when, in an effort to capture the escaped prisoner, Rose was shot and killed. The employment of Mr. Rose by the sheriff was but temporary. The county paid $3 per day for the time Rose was assisting the sheriff. His widow applied for and was awarded compensation on the basis of the earnings of Mr. Rose while he was previously employed as an automobile salesman. This court held that compensation should be computed, not on the earnings of Mr. Rose as an automobile salesman, but on the basis of a wage of $3 per day, the amount which he was being paid at the time he was killed. It will be observed that the method employed in computing the amount of compensation to be awarded in the case of *Millard County* v. *Industrial Commission*, supra, was the same as the method employed by the commission in computing the compensation to be awarded Mr. Walton in the instant case. While the facts in the Millard

County Case and this case are dissimilar, we can perceive of no good reason why the same method of computing compensation should not be employed in both cases. Moreover, the language of the Industrial Act after the amendment of 1921 clearly indicates a legislative intent that when the contract of employment is for a fixed wage per day the amount of compensation to be awarded in case of injury shall be computed upon the basis of the daily wage so agreed upon without regard to whether the employment is continuous or intermittent. Thus under subsection (c) it is provided that, "if the wage is on a daily basis no rule is required," and in subsection (f), "If the wage is on part-time basis, and the employment is regular, the wage shall be extended to full time basis, or that wage the injured would earn if working full time in such employment, and determine as above, (a)." Subsection (e) likewise indicates that the amount of compensation to be awarded in case of an injury shall not be reduced merely because the employment prior to the time of injury was not continuous.

It is urged on behalf of plaintiffs that the employment of Mr. Walton was intermittent and therefore compensation may not be computed under subsection (f), which only provides for computing compensation in cases of part-time wages where "the employment is regular." The record in this case is silent as to what days or parts of days Mr. Walton was employed by Morrison-Merrill & Company during the six months preceding the date of his injury. It does appear that he was not continuously employed by that company because his earnings from that source during the six months' period were only $61.60. We, however, do not deem it of controlling importance whether Mr. Walton's employment was such as to require him to work on a fixed day or days of each week, or a part of certain fixed days, or whether his employment was uncertain, in that he did not know in advance what days his employer would require his services. In either event under the provisions of subsections (c, f), and 5 of section 3142, chapter 67, Laws of

Utah 1921, he was entitled to have his compensation computed and fixed as provided by the formula:

$$\frac{D \times 300 \times 60}{52}$$

It is suggested by counsel for plaintiffs that if the foregoing formula is taken literally the results would lead to an absurdity in that the amount of weekly compensation in this case would be $1,385. It is clear that in using the formula a decimal point should be placed before the ■ 60. Section 3137, heretofore quoted in this opinion, provides that the injured employee "shall receive 60 per cent of his average weekly wages," etc. It is obvious that the 60 in the formula is intended as 60 per cent. When it is obvious that there is a mistake or omission in a statute and the intention of the Legislature can be collected from the whole statute, courts will deem the proper word substituted or supplied. 25 R. C. L. p. 978, § 227, and cases there cited.

It is earnestly urged on behalf of the plaintiff that if the award in this case is sustained Mr. Walton will receive more in compensation during his disability than he would have received in wages if he had not been injured and that such results are contrary to the aims and purposes of the Industrial Act. Plaintiff's contention in such respect is not without merit. An examination of the various workmen's compensation acts shows that in many jurisdictions the method of computing compensation to be paid an ■■ injured employee, or in case of death to his dependents, is similar to that which prevailed in this jurisdiction before the amendment of 1921. It is apparent, however, that the law making power of this state was dissatisfied with the method of computing compensation which prevailed prior to 1921, and hence in the amendment of that year it prescribed a rule for computing compensation. That it was competent for the Legislature to prescribe a

rule for computing compensation to be paid injured employees is not open to question. Nor may it be said that the method of computing compensation adopted by the lawmaking power in the amendment of 1921 it without reason to support it. The loss which an injured employee sustains because of an injury which incapacitates him from work is measured by what he would have earned during the period of his disability rather than by what he actually earned during a given period prior to his injury. The amount earned by an employee who worked intermittently prior to his injury may or may not be a fair index of what he would have earned in the future during a period of disability which may continue for six years, or, in the event the injury results in permanent total disability, for life. It may be that the Legislature intended that the injured employee who, prior to the time of his injury, was unable to secure continuous employment, should be compensated on a basis of loss of earning power rather than on the basis of what he had earned during a given period before he was injured. Those and similar questions are proper subject-matters of inquiry by the lawmaking power for its guidance, but the duty of the commission and of this court is confined to ascertaining the intention of the Legislature as expressed in its enactments and to give such intention effect.

We are of the opinion that under the facts disclosed by the record in this case the award should be affirmed. Such is the order. Defendants are awarded their costs.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.

STRAUP, C. J.

I think an award ought to have been made not to exceed $7 a week.