## SKELLY OIL CO. v. ELLIS et al.

No. 26459.    Jan. 21, 1936.

Rehearing Denied April 21, 1936.

W. P. Z. German, Alvin F. Molony, Robert M. Turpin, Wm. F. Pielsticker, and C. L. Swim, for petitioner.

John T. Cooper and the Attorney General, for respondents.

PER CURIAM. This is an original proceeding in this court brought by the petitioner, Skelly Oil Company, for the purpose of having this court review and vacate an award by the State Industrial Commission in favor of the respondent Hubert Ellis. The parties will hereafter be referred to as petitioner and respondent.

It is conceded that the respondent filed employee's notice of injury and claim for compensation with the State Industrial Commission on April 12, 1934, therein alleging an accidental injury sustained on April 6, 1934, while operating a sand blast and resulting in a partial loss of vision in both eyes. This claim was subsequently amended so as to correct the date of the accident as April 4, 1934, instead of April 6, 1934, as originally stated. The petitioner filed a written answer on April 6, 1934, wherein it alleged failure of the respondent to give written notice of the alleged injury, lack of actual knowledge thereof, and prejudice resulting by reason of respondent's failure to give written notice. Answer further alleged that if respondent was suffering from any loss of vision, the same was not due to any accidental injury, but had existed for a long time prior to the alleged injury. Upon the issues thus presented numerous hearings were held by the State Industrial Commission. Thereafter, on June 1, 1935, the Com-

mission entered its order and award, which we are now called upon to review. The pertinent portions of said order are as follows:

"(1) That on the 4th day of April, 1934, the claimant was in the employment of the respondent and engaged in a hazardous occupation, subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date, arising out of and in the course of his employment, he sustained an accidental injury to his eyes.

"(2) That the claimant's average weekly wage at the time of said accidental injury was $17.28 per week.

"(3) That by reason of said accidental injury, the claimant was temporarily totally disabled from the performance of ordinary manual labor from the 7th day of April, 1934, to the 26th day of April, 1934, or two weeks beyond the five-day waiting period.

"(4) That as a further result of said accidental injury, the claimant suffered a 16 per cent. loss of vision to each eye, due to the injury of April 4, 1935.

"(5) The Commission further finds: That the respondent was not furnished written notice of said accidental injury within the 30 days as provided by statute, but that the respondent did have verbal notice thereof, and was not prejudiced by the failure to give written notice."

The Commission then ordered the petitioner to pay the respondent the sum of $23.08, or two weeks' compensation on account of temporary total disability, being at the rate of $11.54 per week, and the further sum of $657.78, being 57 weeks' accrued compensation at the rate of $11.54 per week, from the date temporary total disability ended to June 1, 1935, on account of permanent partial disability, and to continue payments until respondent had been paid the total sum of $923.20, or 80 weeks' compensation at $11.54 per week by reason of permanent partial disability.

By order of June 7, 1935, the commission corrected the fourth finding of fact so as to make it read April 4, 1934, instead of April 4, 1935, as appears in the original.

The first contention of the petitioner is as follows:

"The record does not contain competent evidence to authorize the finding of the State Industrial Commission that claimant suffered temporary total disability as the result of an accidental personal injury sustained on April 4, 1934."

The evidence on the part of the petitioner as well as that of the respondent, when considered together with the reasonable inferences to be drawn therefrom, was in our opinion sufficient to support the finding of the commission both in regard to accidental injury being sustained by the respondent on April 4, 1934, and the resulting temporary total disability by reason thereof. The commission found that the respondent had sustained temporary total disability over a period of two weeks. The evidence in connection therewith, while not direct and positive, was as we have previously observed sufficient under these circumstances. The finding of the commission in this regard will not be disturbed. Marland v. State Industrial Commission, 153 Okla. 49, 4 P. (2d) 1018; Cannady Co. v. Balch, 156 Okla. 222, 10 P. (2d) 427.

It is next contended by the petitioner that:

"An award for permanent loss of vision resulting from accident is contrary to law in the absence of competent evidence that such permanent loss of vision is greater after the accident than it was prior to the accident."

As an abstract statement of law, this contention is correct; whether it is applicable here is another question. Two medical witnesses testified with reference to the vision of the respondent subsequent to April 4, 1934. On behalf of the petitioner Dr. Dwight B. Shaw testified that he examined respondent on April 8, 1934, and at that time found his vision in each eye to be 20/100, according to Snellens table. It is agreed that a correct interpretation of this finding means that it represents a loss of vision of 51 1/10 per cent. On behalf of respondent Dr. C. Chittle testified that he examined the respondent on May 25, 1934, and again on February 9, 1935, on which latter date he found respondent's vision the same as it was on the first examination. According to the testimony of this witness, on May 25, 1934, respondent's vision measured by Snellens chart was 20/65 in the right eye, which represented a loss in vision of 33%, and 20/100 in the left eye which represented a loss of vision in that eye of 51 1/10 per cent. A Dr. James C. Braswell, on behalf of petitioner, testified that he had examined the respondent on May 14, 1933, and at that time his examination disclosed a loss of vision of 51 1/10 per cent. in each eye. Dr. James B. Reynolds, on behalf of the respondent, testified that he had examined the respondent for the Tidal Oil Company April 4, 1931, and at that time found no impairment in

respondent's vision. Other evidence in the record discloses that the respondent continued in the employ of the petitioner after the examination by Dr. Braswell in May, 1933, for a period of more than a year or until after he was examined by Dr. Shaw on April 8, 1934. The evidence further shows that if respondent was suffering from any loss of vision prior to the alleged injury, it was not apparent. Therefore, under all of the evidence, both medical and lay, whether respondent's vision was impaired prior to April 4, 1934, was a disputed question of fact. The commission is the judge of the credibility of the witnesses appearing before it, and of the weight to be given to the testimony of such witnesses. As we have said in Hubbard Drilling Co. et al. v. Moore, 158 Okla. 130, 12 P. (2d) 897:

"'* * * It acted within its province in making its decision as to what testimony it would believe and what it would disregard.''

Since, as we have said in Hubbard Drilling Co. v. Moore, 158 Okla. 132, 12 P. (2d) 900:

"Under section 7290, C. O. S. 1921, as amended by chapter 61, sec. 6, S. L. 1923, where a claimant who has previously lost the sight of his right eye, receives an injury in the course of his employment destroying 50 per cent. of his left eye, thereby leaving him permanently partially disabled, the claimant is entitled to compensation for partial impairment of both eyes, and not for the impairment of the left eye by itself.

"The method of calculating the award described in paragraph one of this syllabus shall be determined by the commission by adding together the percentage of loss to each eye, dividing by two, and using the quotient as the percentage of the permanent partial disability sustained by claimant for the loss to both eyes, on the basis of 500 weeks."

The commission found that the respondent had sustained a 16 per cent. loss of vision in both eyes. Under the rules announced in the above case and the evidence before it, the commission would have been justified in finding a much greater degree of impairment However, this is not an error of which the petitioner can complain. We must hold that the contention of the petitioner in this respect is without support under the facts presented by this record.

The final contention of the petitioner is:

"It was error, under the evidence in this case, for the commission to determine the compensation rate by applying paragraphs 1 and 2 of section 13355, O. S. 1931."

With this contention of the petitioner we must agree. The testimony of the respondent disclosed that he worked on an hourly basis, being paid 48 cents per hour, and that he worked 36 hours a week, and that he had been in the employ of petitioner during the year preceding the alleged injury, but fails to show whether he worked steadily or at irregular intervals. The petitioner introduced evidence which is uncontradicted, to the effect that the respondent worked only at irregular intervals, and had worked for the petitioner 115 days during the year preceding the alleged injury, and that he had been paid the sum of $454.93 for his services. It is urged by the petitioner that under these circumstances the average annual earnings of the employee should have been ascertained under subdivision 3 of section 13355, O. S. 1931, together with subdivision 4 of the same section, and that when so applied the award should have been for the minimum $8 per week, as provided by subdivision 5 of section 13356, O. S. 1931. While we agree that the average annual earnings of the respondent should have been ascertained under subdivision 3 of section 13355, supra, we do not agree with their contention that the minimum provided by subdivision 5 of section 13356, supra, is applicable.

Section 13355, O. S. 1931, in so far as pertinent to this discussion, reads as follows:

"Except as otherwise provided in this act, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:

"1. If the injured employee shall have worked in the employment in which he was working at the time of the accident whether for the same employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of 300 times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of 300 times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

"3. If either of the foregoing methods

of arriving at the annual average earnings of the injured employee cannot reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the accident.

"4. The average weekly wages of an employee shall be one-fifty-second part of his average annual earnings."

It will be noted that subdivisions 1, 2 and 3 of the statute provide complete rules for determining the average annual earnings of the employee in any situation that may be presented. Subdivision 4 has no office until the average annual earnings of the employee have been determined under one of the preceding subdivisions, and then by subdivision 4 the average weekly wages of the employee shall be ascertained.

In Oklahoma City v. Arnold, 165 Okla. 294, 25 P. (2d) 651, wherein an employee was working under an agreed arrangement only a part of the time, we pointed out that subdivisions 1 and 2 of said section 13355, O. S. 1931, would be inapplicable to such a situation, and that subdivision 3 of said statute was the proper method to ascertain the average annual earnings of the employee, and that the average weekly wages are to be determined by subdivision 4 of said section of the statute. In Oklahoma City v. Arnold, supra, we said:

"An award of compensation for an employee, who works one week and then misses a week under a definite or agreed scheme or plan, should be based upon the average annual earnings under subdivisions 3 and 4, section 7289, C. O. S. 1921 (O. S. 1931, sec. 13355), and not upon the wages for any one week."

Subsequently, in Producers & Refiners Corp. v. McDougal, 166 Okla. 60, 26 P. (2d) 210, our holding in Oklahoma City v. Arnold, supra, was followed in the syllabus, but certain language appeared in the opinion which would, upon casual examination, appear to hold that subdivision 4 of said section 13355, supra, was also a method for determination of the average weekly wage of the employee, where the evidence discloses the actual earnings of such employee for the preceding year, without consideration to either subdivisions 1, 2, or 3, of said section 13355, and to this extent the language pointed out in the opinion was palpably inappropriate and inapplicable. However, the language used in this opinion appears to have tinged subsequent decisions of this court, but in Frick-Reid Supply Co. v. Hunter, 171 Okla. 348, 43 P. (2d) 145, we refused in effect to follow the holding of the language of Producers & Refiners Corp. v. McDougal, supra, further, but inadvertently left therein language which would indicate that under some circumstances subdivision 4 of said section 13355 might be employed in determining the average annual earnings of an employee. More recently in the case of Nichols Transfer & Storage Co. v. Pate, 173 Okla. 582, 49 P. (2d) 225, Mr. Justice Busby, speaking for this court, said:

"Our decision on this matter is governed by the rule announced in the case of Frick-Reid Supply Co et al. v. Hunter, 171 Okla. 348, 43 P. (2d) 145, wherein we said in paragraph 2 of the syllabus:

" 'Where the State Industrial Commission upon the evidence before it erroneously orders an award of compensation computed as provided by subdivisions 1 and 2, section 13355, O. S. 1931, and other evidence in the record would support an award computed upon the basis provided in subdivision 4 of said section 13355, supra, this court in vacating the award and remanding the matter to the commission will not order an award upon the record made at the previous hearing without affording the claimant an opportunity to make a showing under subdivision 3 of section 13355, supra.'

"In that case we definitely repudiated petitioner's contention that the actual aggregate annual earnings of an injured employee who worked at irregular intervals, when divided by 52, constitutes a maximum limitation on the weekly rate of compensation, and held that the controlling statutory provision in determining the base rate of compensation in this character of case is subsection 3 of section 13355. The case constitutes a modification by inference of some of the language used in the previous case of American Tank & Equipment Co. v. Gray et al., 167 Okla. 494, 30 P. (2d) 901, wherein we applied to a case involving an irregular employee the rule previously announced in connection with an employee working a part of each month under a general and agreed plant of part-time employment. See Producers & Refiners Corp. v. McDougal et al., 166 Okla. 60, 26 P. (2d) 210.

"In the case of American Tank & Equipment Co. v. Gray et al., supra, we did recognize, however, that under subdivision 3 of section 13355, supra, the earnings of other employees similarly situated were proper elements of consideration in determining the base rate of compensation, although that element was not actually taken into consideration in determining the compensation which the claimant in that case

should receive. The later case of Frick-Reid Supply Co. et al. v. Hunter, supra, by attaching controlling importance to subdivision 3 of section 13355, supra, recognizes the propriety of giving proper evidentiary importance to the earnings of other employees similarly situated in order to determine the earning capacity of the claimant when the compensation is determinable under the provisions of that subsection.

"Under subdivision 3 of the statute the base rate of compensation is dependent upon the earning capacity of claimant as determined upon consideration of his own earnings and those of other employees similarly situated.

"Inasmuch as the method adopted by the commission is erroneous, and since we are unable to sustain the contention of either of the parties in this case under the rule announced in Frick-Reid Supply Co. Case, the award is vacated and the cause remanded, with directions to the commission to afford the claimant an opportunity to introduce evidence for the purpose of establishing a base rate for compensation in accord with the rule announced in that case and the provisions of subdivision 3 of the controlling statute."

In no event does subdivision 4 of section 13355, O. S. 1931, provide a method for the computation of an employee's average annual earnings, but is only to be used in ascertaining the average weekly wages of the employee after the average annual earnings have been ascertained by one of the methods provided in subdivisions 1, 2, or 3 of said section of the statute and where either the provisions of subdivisions 1 or 2 cannot be reasonably and fairly applied in arriving at the annual average earnings of the employee, then the same must be ascertained under subdivision 3 of said section of the statute. These methods are exclusive. Since the evidence in the record before us discloses that the respondent only worked at irregular intervals during the year that he was employed by the petitioner, therefore, the proper method of arriving at his average annual earnings was under subdivision 3 of said section 13355, supra, and the action of the commission in computing the average earnings of the respondent under subdivisions 1 and 2 of said section was error. For this reason the award of the commission will be vacated and the cause remanded, with directions to hear evidence and to ascertain the average annual earnings of the respondent under subdivision 3 of section 13355, O. S. 1931, and to make its award in accordance therewith. There appears to be a slight error in the calculation of the award as made by the commission on the face of their calculations, but since the award must be vacated, we will not discuss this.

Award vacated, with directions.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, and PHELPS, JJ., concur.