Devlin, Appellant, *v.* Iron Works Creek
Construction Corp. et al.

Argued March 24, 1949. Before RHODES, P. J., HIRT,
RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J.,
absent.)

*James H. McHale,* for appellant.

*George H. Detweiler,* with him *Robert A. Detweiler, Charles W. Sweeney* and *David Fulmer Keely,* for appellees.

OPINION BY DITHRICH, J., May 16, 1949:

Appellant was employed by the defendant appellee as a crane operator. On August 19, 1942, he met with a serious accident in the course of his employment, as a result of which he suffered severe second and third degree burns of both legs and both hands. He was hospitalized for over three months and was not able to resume his regular employment until October 26, 1945.

The present proceeding is to recover compensation for loss of earnings for partial disability for an interim period between December 13, 1943, and October 26, 1945, a period of 97 weeks. During that interim claimant was employed as a truck driver at a base pay of $1.20 per hour or $48 for a forty-hour week. His base pay as a crane operator had been $1.80 per hour or $72 for a forty-hour week. A written compensation agreement entered into September 8, 1942, stated, in part, that *"As employer generally works* 40 hrs. per week *the wages are taken* as $70.00 per week." (Italics supplied.) The agreement was signed by the employe and by his employer and its insurance carrier and it was approved by the compensation authorities.

The matter was subsequently so proceeded with that an award in favor of claimant, after the refusal of defendant's petition to terminate the compensation agreement, was modified by stipulation of the parties January

8, 1946. On April 8, 1946, claimant filed his petition to review the provisions of the existing agreement, claiming that he had suffered an average loss of $24 per week during the period when he was employed as a truck driver and was therefore entitled to compensation for partial disability.

The referee found as a fact that: "8. During the time the case was pending on appeal, claimant was employed by Henry J. Kunzig from December 13, 1943 until October 26, 1945 as a truck driver. He received $48.00 per week salary. His earnings before the accident were $1.80 per hour (the agreed wage in agreement filed was $72.00 per week). Therefore, he had a loss of $24.00 per week for a period of 97 weeks."

That finding was specifically affirmed by the Board, but, paradoxically, the referee's eleventh finding that ". . . claimant suffered a loss of $24.00 per week from December 13, 1943 to October 26, 1945, as a result of the accident of August 19, 1942" was vacated and the following finding substituted therefor: "Eleventh: The evidence indicates that there was a loss in earnings between December 13, 1943 and October 26, 1945, *only when the claimant's working hours did not exceed forty per week.*" (Italics supplied.)

The Board then made two additional findings as follows: "Twelfth: The evidence shows that the claimant's interim work sometimes exceeded forty hours per week at time and a half and on some occasions double time. Thirteenth: There is no evidence as to actual earnings for any thirteen week period between December 13, 1943 and October 26, 1945."

Defendant's appeal from the referee's order that it pay claimant the sum of $15 per week for the interim period of 97 weeks was sustained and the petition dismissed.

Claimant appealed to the Court of Common Pleas of Philadelphia County mainly on the ground that the

Board had erred in using "one measure or standard of earnings prior to the accident and a different measure or standard subsequent to the accident." That is exactly what the Board did, but its action was upheld by the learned court below because "Immediately after the accident the parties agreed by the Compensation Agreement that the average weekly wages of the claimant were $70.00 per week. . . . The Workmen's Compensation Board in adopting as its basis the *actual wages* received in one week was only following the law as set forth in the Workmen's Compensation Act." (Italics supplied.) Section 306 (b) as finally amended May 18, 1945, P. L. 671, 77 PS §512, provides, in part, that: "The term 'earning power,' as used in this section, shall in no case be less than the weekly amount which the employe receives after the accident." In *Scipani v. Pressed Steel Car Co.*, 150 Pa. Superior Ct. 410, 415, 28 A. 2d 502, 504, we held that "The 1939 amendment refers to the actual amount of wages received regardless of the rate of pay . . ."

We would agree with the learned court below if the Workmen's Compensation Board had used "as its basis the actual wages received," but there was no evidence of the "actual amount of wages received *regardless of the rate of pay,*" as provided by the 1939 amendment, either prior to or subsequent to the accident. (Italics supplied.) When claimant sought to prove overtime payments prior to the accident, defendant objected and the objection was sustained. But defendant on cross-examination of claimant was permitted to prove that he received not only overtime, but double time payments as a truck driver after the accident. Before the referee, defendant was careful to have it appear that the cross-examination of claimant as to overtime and double time was solely for the purpose of proving that claimant was no longer partially disabled. It acquiesced in the statement by the referee that: "The only question in this case

is whether or not this man has any disability. You say he made so much an hour at the time he was injured and he testifies he makes so much an hour now. Why take up too much time by putting in unnecessary evidence?" The evidence considered "unnecessary" by the referee was evidence of claimant's "actual wages" during his partial disability. And, although the referee ruled out such evidence when it was offered by claimant, the Board in its opinion said: ". . . the claimant has not been able to show what his *actual total earnings* in cash were for any thirteen week period between December 13, 1943 and October 26, 1945 and for this reason the order entered by the referee cannot stand. It was based on an assumed loss of $24.00 per week *without considering overtime earnings* and this is patently incorrect." (Italics supplied.)

If it was "patently incorrect" not to consider overtime earnings subsequent to the accident, then it was "patently incorrect" not to consider overtime earnings prior to the accident. The Board said "The law is essentially fair" and then proceeded to demonstrate that it is not "fair" as administered by it in this proceeding. Of the claimant it said: "The only thing he was sure of was the hourly rate of his earnings. To this he applied the formula of a regular forty hour week to show the loss upon which he based his case. But his formula broke down completely when he had to admit on cross-examination that he had, more often than not, worked considerably more than forty hours per week on many occasions at time and a half and sometimes double time on trips to Boston, New York and Baltimore while driving a truck for one Henry J. Kunzig."

We pause to ask what is "fair" about accepting the formula of a regular forty-hour week before the accident and rejecting it after the accident; yet, that is what the Board and the court below did. To hold that the words in the compensation agreement, "As employer gen-

erally works 40 hrs. per week, the wages are taken as $70.00 per week," fixed the "actual wages" prior to the accident was palpable error. Whatever standard or formula is applied in computing the earnings after an accident, the same standard or formula should be applied in computing the earnings before an accident. If overtime and double time are to be used in the computation of earnings after the accident, as they were used in the present proceeding, then manifestly they should be used in the computation of earnings before the accident. Any other method would be unjust, unfair, and inequitable.

The judgment is reversed and the record is remitted for further proceedings not inconsistent with this opinion.