SHOEMAKE STATION and General Bonding and Insurance Company, Petitioners,

v.

Billy Gene STEPHENS and the State Industrial Commission of the State of Oklahoma, Respondents.

No. 36324.

Supreme Court of Oklahoma.

Dec. 14, 1954.

Ray Teague, John B. Dudley, Jr., Oklahoma City, for petitioners.

W. A. McDaniel, Seminole, Mac Q. Williamson, Atty. Gen., Richard M. Huff, Asst. Atty. Gen., for respondents.

O'NEAL, Justice.

This is a proceeding by Grover Shoemake, doing business under the name of Shoemake Station, and his insurance carrier, General Bonding and Insurance Company, to review an award of the State Industrial Commission awarding compensation to respondent Billy Gene Stephens.

On June 3, 1953, respondent filed his claim for compensation in which he states that on March 8, 1953, he sustained an accidental personal injury while in the employ of petitioner Shoemake Station consisting of an occlusion of the middle cerebral artery resulting in paralysis of the left arm, left leg and face resulting in some permanent disability to his person. The injury occurred while he was engaged in boxing with his employer at the employer's request.

The case was assigned to a trial commissioner who at the close of the evidence found: On the 8th day of March, 1953, while in the employ of Shoemake Station he sustained an accidental personal injury

arising out of and in the course of his employment, resulting in paralysis of his left arm, left leg and face. The injury was caused while he was engaged in boxing with his employer at the employer's request and that as a result of his injuries he was temporarily totally disabled for a period of 31 weeks and two days for which he is entitled to compensation in the total sum of $783.33 and as the further result of the injury he sustained a 35 per cent permanent partial disability to his body as a whole and is entitled to compensation for such disability in the sum of $4,375. In his finding number two the commissioner further found:

"The Commission finds further that claimant was a minor of the age of 15 years; that he was working part time only and earning $5.00 per day for such part time employment; the claimant being a minor under subdivision 5, Section 21, Title 85 O.S.A.1951; that persons regularly employed doing the most similar type of work, working regularly, earned approximately $40.00 to $55.00 per week; that by reason of the minority of the claimant under normal condition his wages would be expected to increase and his earning be equal to the regular employees, and claimant is therefore entitled to compensation on the basis of $50.00 per week earning capacity or $25.00 compensation rate per week."

The commissioner upon such finding entered an award in favor of respondent for temporary total and permanent partial disability in amounts as above stated payable at the rate of $25 per week. The award was sustained on appeal to the Commission en banc.

Petitioners bring the case here to review this award and rely for its vacation on four separate propositions.

Their first proposition is that the Commission's finding No. 2 that claimant was entitled to compensation at the rate of $28 weekly (finding shows $25) is erroneous and not supported by law or evidence.

■ The rate of compensation payable to an injured employee is based on annual average earnings or in the alternative on the annual earning capacity to be determined as provided by 85 O.S.1951 § 21. Subdivision 1 of this section as far as here material provides that the average annual earnings of an employee shall be three hundred times the average daily wage or salary which he shall have earned in such employment during the days when he was so employed. Provided that he has worked substantially the whole of the year immediately preceding the injury.

If the annual earnings of an employee may not be properly computed under this subdivision then it is the duty of the Commission to determine as to whether such earnings may be properly computed under subdivision 2 of said section which provides:

"If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed."

If neither of the above subdivisions are applicable then The State Industrial Commission should proceed to determine the employee's average earning capacity and average weekly compensation under subdivisions 3 and 4, which provide:

"3. If either of the foregoing methods of arriving at the annual average earnings of an injured employee cannot reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the accident.

"4. The average weekly wages of an employee shall be one fifty-second part of his average annual earnings."

See, Skelly Oil Co. v. Ellis, 176 Okl. 569, 56 P.2d 891; Chickasha Cotton Oil Co. v. Marcum, 182 Okl. 55, 75 P.2d 1129; Eagle Picher Mining & Smelting Co. v. Lamkin, 189 Okl. 463, 117 P.2d 519.

The evidence shows that respondent is a minor and was 15 years of age at the time he sustained his injury and was at that time working for petitioner, Shoemake Station. The duties assigned him were the usual and customary duties connected with the operation of a filling station. His working hours were from 7:30 A.M. to 7:30 P.M. He was not employed as a regular employee but was a casual employee. He worked for petitioner, Shoemake Station on occasions for about four years. He was paid at the rate of $5 per day for the time he worked. He was then attending school. He worked after school hours and on weekends and on holidays and occasionally worked in place of a regular employee who for some reason failed to report for work. The hours he worked for petitioner Shoemake during his employment would amount to the equivalent of 30 days per year. It is obvious from the above evidence that respondent's average annual earnings could not be properly calculated under either subdivision one or two and the State Industrial Commission probably proceeded to calculate his earning capacity and average weekly wages under subdivisions 3 and 4.

■ The Commission found from this evidence that respondent's earning capacity was $50 per week and that his compensation rate was $25 per week. This evidence was properly considered by the Commission in arriving at respondent's earning capacity and we think sufficient to sustain its finding in this respect.

In Acme Semi-Anthracite Coal Co. v. Manning, 178 Okl. 420, 63 P.2d 76, 79, this court said:

"It is to be noted that subdivision 1 and subdivision 2 deal with a method of computation by the average daily wage. That phrase was dropped in subdivision 3, and we think for a definite reason. Subdivision 3 is seeking to develop a broad and liberal method of determining not the average daily wage, but the annual earning capacity of the injured employee in a field denominated by that subdivision and as long as there is competent evidence introduced to support the finding of the Commission on what that annual earning capacity is, this court will not disturb it. * * *"

See, also, Eagle Picher Mining & Smelting Co. v. Lamkin, supra.

Moreover subdivision 5 of said section, supra, provides:

"If it be established that the injured employee was a minor when injured, and that under normal conditions his wages would be expected to increase, the fact may be considered in arriving at his average weekly wages."

■ The Commission by its finding apparently took into consideration this subdivision in arriving at the earning capacity and average weekly wages of respondent and we think properly so. Szmuda v. Percy Kent Bag Co., 214 App.Div. 341, 212 N.Y.S. 139; Johnson v. Kruckemeyer, 224 Mo.App. 351, 29 S.W.2d 730; Badger Carton Co. v. Industrial Commission, 195 Wis. 327, 218 N.W. 190.

The evidence further shows that respondent at the time he sustained his injury was an able-bodied young man capable and willing to perform ordinary manual labor. While at school he regularly engaged in athletics. While working for petitioner Shoemake he did the same work as did regular employees; that during vacation he worked on a farm and earned while so doing wages at the rate of $6.50 per day; that persons doing the same kind of work respondent was doing at the time he sustained his injury, who were employed for substantially the whole of the year earned from $40 to $55 per week.

The Commission found from such evidence that by reason of the minority of the respondent under normal conditions his wages would be expected to increase and.

his earnings be equivalent to that of regular employees.

We think the evidence sufficient to sustain this finding.

Petitioners in their fourth proposition contend that the Commission erred in finding that respondent sustained an accidental injury arising out of and in the course of his employment.

■ The evidence discloses that respondent sustained his injury while engaged in boxing with his employer at his employer's request; that his employer kept boxing gloves at his place of business for the amusement of his employees and encouraged them to engage in boxing and that he participated in such sport with them. Immediately prior to the time respondent started boxing with his employer the employer had been boxing with another employee. At that time respondent was engaged in working on a tire fixing a flat. When the bout between the employer and the other employee was over the employer threw the boxing gloves to respondent and requested respondent to box with him. Respondent protested, stating that he did not wish to engage in boxing with him. The employer then told respondent that he would not hit him but would attempt to ward off his, respondent's, blows; that after the boxing started petitioner struck respondent a blow about his head, knocked him down, resulting in the injury as above stated. We think this evidence sufficient to establish that the injury sustained by respondent constituted an accidental injury and that it arose out of and in the course of his employment.

In Anderson & Kerr v. State Industrial Commission, 155 Okl. 137, 7 P.2d 902, 904, we held:

"Where scuffling and frolicking by employees for pastime and recreation while on duty have been permitted by an employer or acquiesced in by it or its foreman having charge of the employees and the work for several years, and such frolicking has become a custom in the work, and the foreman is the aggressor in injecting a new element into such frolicking or playing,

and injury results therefrom to an employee who participates therein upon invitation of the foreman, the master is liable to the injured employee for compensation for the accidental personal injury so sustained."

In 159 A.L.R. 337, the following rule is announced:

"Where it is shown that an employer has actual knowledge or should have known that employees customarily or habitually engaged in horseplay or fooling, and no active steps were taken to prevent it or adequately warn against it, and particularly where supervisory employees are guilty in such respects through either acquiescence or participation, injuries received as a result have been regarded as arising 'out of' the employment, on the theory that an additional risk was thereby created which became incidental to the employment."

Annotations appearing in the notes support the text.

Petitioners in their second proposition contend that the evidence is insufficient to sustain the award of the Commission as to total temporary disability and in proposition three a like contention is made as to permanent partial disability.

The evidence is undisputed that on March 8, 1953, respondent while in the employ of petitioner Shoemake sustained an accidental injury at the time and in the manner stated in his claim. The injury occurred in the manner as heretofore stated. The blow received by respondent from his employer knocked him down rendering him unconscious. He remained in such condition for several hours. He was then taken to a hospital at Lindsay, Oklahoma, where he received first aid treatment. He remained there several hours and was then removed to a hospital in Oklahoma City for examination and treatment. He remained in the hospital until March 19, 1953, when he was discharged and returned to school. He was, however, required to report at the hospital for further examination and observation at intervals and he continued to do so until sometime in October, 1953, and since which

time he has had no further treatment. His condition was somewhat improved; however, his left arm and left leg still remained paralyzed and he is still unable to do manual labor as he did before he sustained his injury.

The medical evidence is in conflict as to the extent of respondent's disability. The physicians all agreed that respondent's left arm and left leg have been paralyzed and as the result of that condition he was then temporarily totally disabled from performing ordinary manual labor, but some of them stated that in their opinion it was too early to determine as to whether he will be to any extent permanently disabled; that he should be kept under observation and treatment for another year before the extent of his disability could be definitely determined but expressed no opinion as to the cause of such disability. Several other physicians, however, examined respondent and filed written reports of their findings and conclusions which reports were admitted in evidence by agreement.

One of these physicians who examined respondent on September 30, 1953, stated that he found respondent suffering from paralysis of his left arm and left leg and from the history of the case obtained from respondent and his examination expressed the opinion that such condition was caused by the injury complained of and that his condition would not further improve and that as a result thereof he had sustained a 30 per cent permanent partial disability to his body as a whole.

Another physician who examined respondent on October 15, 1953, and filed his written report in the case, likewise so stated except he stated that in his opinion respondent as a result of his injury received on March 8, 1953, sustained a 35 per cent permanent partial disability to his body as a whole.

While the evidence is in conflict as to the extent of disability sustained by respondent we think the evidence is sufficient to sustain the finding of the Commission as to temporary total and permanent disability.

We have repeatedly held that the question of extent of disability arising from an accidental injury presents a question of fact for the determination of the State Industrial Commission and its finding on such issue and an award based thereon will not be disturbed on review where reasonably supported by medical evidence.

Award sustained.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, DAVISON, WILLIAMS and BLACKBIRD, JJ., concur.

ARNOLD, J., concurs in result.

CORN, J., dissents.