376 P.2d 176

E. T. KENDRICK, Plaintiff-Appellee,

v.

GACKLE DRILLING COMPANY, Inc., and
United States Fidelity and Guaranty
Company, Defendants-Appellants.

No. 7113.

Supreme Court of New Mexico.

Sept. 20, 1962.

Supplemental Opinion Oct. 1, 1962.

Rehearing Denied Nov. 8, 1962.

Merrill L. Norton, Lovington, for appellants.

Lowell Stout, Hobbs, for appellee.

NOBLE, Justice.

This appeal results from an award of partial permanent disability under the 1959 Workmen's Compensation Act.

It is not disputed that the claimant Kendrick received a compensable injury while employed as a roughneck on defendant Gackle Drilling Company's oil well drilling rig. The disability was total from August 1, 1960 to August 11, 1961 and claimant was paid maximum compensation during that period. Among others, the trial court made the following findings of fact:

"4. Plaintiff now suffers from partial disability to the body as a whole

due to the accidental injuries sustained on August 1, 1960. He is entitled to compensation benefits since April 11, 1961 equivalent to forty percent (40%) of total disability which percentage is derived by dividing his average wage per hour worked before disability into the difference between such average hourly wage before disability and the average hourly wage he now earns. I find that prior to the injuries of August 1, 1960 his average weekly wage was $133.75 for 56 hours or $2.39 per hour and that his present wage is $91.00 for 64 hours or $1.42 per hour and that he is now earning all that he is able to earn in any employment.

"5. Plaintiff is unable to return to his previous occupation as a roughneck due to the accidental injuries sustained in the course of his employment on August 1, 1960 and he is now earning as much as he is able to earn in any employment.

"6. Plaintiff's disability is a natural and direct result of the accidental injuries sustained in the course of his employment on August 1, 1960."

Based upon those findings as to claimant's average weekly earnings before and after the accidental injury, the court applied the formula for determining the compensation benefits as provided in Section 59–10–18.3, N.M.S.A.1953.

Defendant's complaint is that the trial court ignored the requirements of Section 59–10–12(m) (2) (c) in arriving at claimant's average weekly wage prior to the accident and that if those requirements had been followed the court must have determined such wage to be $61.72 instead of $133.75. We must look to a construction of the pertinent statutory provisions for the solution.

Section 59–10–12(m) (2), N.M.S.A.1953, insofar as pertinent, reads:

"(2) Average weekly wages for the purpose of computing benefits provided in this act, shall, except as hereinafter provided, be calculated upon the monthly, weekly, daily, hourly, or other remuneration which the injured or killed employee was receiving at the time of the injury, and in the following manner, to wit:

\* \* \* \* \* \*

"c. Where the employee is rendering service on a per diem basis, the weekly wage shall be determined by multiplying the daily wage by the number of days and fractions of days in the week during which the employee under a contract of hire was working at the time of the accident, or would have worked if the accident had not intervened; Provided, however, that in no case shall the daily wage be multiplied

by less than three (3) for the purpose of determining the weekly wage.

"d. Where the employee is being paid by the hour, the weekly wage shall be determined by multiplying the hourly rate by the number of hours in a day during which the employee was working at the time of the accident, or would have worked if the accident had not intervened, to determine the daily wage; then the weekly wage shall be determined from said daily wage in the manner set forth in subparagraph (c) hereof; Provided, that in no case shall the hourly rate be multiplied by less than seven (7)."

■ Defendants earnestly argue that the testimony is undisputed that claimant was hired and went to work on July 29, 1960, and that the drilling operation on the well on which claimant worked was finished August 1, 1960, the day of the accidental injury and that while working under this employment he was receiving $1.92 per hour. They contend that claimant could only have been hired for four days since the job on which he was working at the time of the accident would end then. Defendants strongly assert that the above statute requires the hourly rate to be multiplied by eight for the daily wage and in this instance the daily wage to be multiplied by four. This, they argue, compels a finding that claimant under his employment was receiv-

ing an average weekly wage of $61.72 before the accident instead of the $133.75 found by the court. While § 59–10–12(m) (2) defines the method for determining average weekly earnings under varying circumstances of employment, the methods so set forth are not exclusive nor are they under all circumstances mandatory requirements or binding on the trial court. Recognizing that there may be circumstances of employment under which such methods of computing average weekly wages would not be fairly representative of the employee's average weekly wages either before or after an accidental injury, the Legislature enacted § 59–10–12(m) (3), N.M.S.A.1953, which reads:

"(3) Provided further, however, that in any case where the foregoing methods of computing the average weekly wage of the employee by reason of the nature of the employment or the fact that the injured employee has not worked a sufficient length of time to enable his earnings to be fairly computed thereunder, or has been ill or in business for himself, or where for any other reason said methods will not fairly compute the average weekly wage; in each particular case computation of the average weekly wage of said employee in such other manner and by such other method as will be based upon the

facts presented fairly determine such employee's average weekly wage."

Prior to the enactment of the 1959 amendment to the Workmen's Compensation Law, payments were measured by the workman's percentage of physical disability caused by the accidental injury. Seay v. Lea County Sand & Gravel Co., 60 N.M. 399, 292 P.2d 93. By Chapter 67, Laws of 1959, § 4(a) (§ 59–10–12.1(A), N.M.S.A.1953), the Legislature changed the basis for the measure of compensation and placed it upon the loss of wage earning ability rather than upon a percentage of physical disability. "Disability" is now defined as (§ 59–10–12.1(A), N.M.S.A.1953):

"* * * a decrease of wage earning ability due to a workman's injury suffered by accident arising out of and in the course of his employment."

The trial court found that the average weekly wage of claimant prior to the accident was $133.75. In arriving at this amount, the court evidently accepted the testimony of claimant and his 1960 income tax return showing total wages of $3,745.06 for 28 weeks employment in 1960 prior to the accident. The trial court obviously applied a method other than that provided in § 59–10–12(m) (2) (c) and (d) in determining the average weekly wage prior to the accident. If this method of determining such average weekly wage is unfair or is not based upon substantial evidence in the record, then the trial court erred.

■ If we are to consider only the method of computation provided by § 59–10–12 (m) (2) as contended for by defendants, then their argument is correct. But it is a rule of universal application in statutory construction that all parts of an act relating to the same subject matter are to be construed together. Mann v. Board of County Commissioners, 58 N.M. 626, 274 P.2d 145; Reese v. Dempsey, 48 N.M. 417, 152 P.2d 157; Sakariason v. Mechem, 20 N.M. 307, 149 P. 352. Section 59–10–12(m) (3) makes provision for using any other fair method of determining such average weekly wage in accordance with facts in evidence where for any reason the method set out in subsection (2) will not fairly compute the average weekly wage.

■ In construing the statute, we must first consider the purpose of determining the average weekly wage. The Legislature has said that "disability" of an injured workman is to be measured by his loss of wage earning ability caused by the accidental injury. Sec. 59–10–12.1(A), N.M.S.A.1953. The loss of wage earning ability is in theory a comparison of what the employee would have earned had he not been injured and what he is able to earn in his injured condition. See Larson, Workmen's Compensation, § 60.11; Morrison-Merrill & Co. v. Industrial Commission, 81 Utah 363, 18 P.2d 295. We are committed to the "fairness rule" in New Mexico. La Rue v. Johnson, 47 N.M. 260, 141 P.2d 321. Sections

59–10–12(m) (2) (a) (b) (c) (d) (e) and 59–10–12(m) (3) were not amended by the 1959 act. While those sections of the statute were considered in La Rue v. Johnson, supra, it was not necessary to construe § 59–10–12(m) (3) in connection with the preceding sections of the statute.

■ We construe § 59–10–12(m) (3), N.M.S.A.1953 to permit the trial court to determine the pre-injury average weekly wages of an injured workman by any method supported by the evidence in the particular case which fairly represents his average weekly wage if they cannot be fairly determined by one of the formulae set out in § 59–10–12(m) (2). See, also, Safeway Stores v. Mauk, (Okl.) 275 P.2d 987; Skelly Oil Co. v. Ellis, 176 Okl. 569, 56 P. 2d 891.

■ Subdivision (3) of § 59–10–12(m), N.M.S.A.1953 seeks to develop a broad and liberal method of determining not a loss of earnings or income caused by the injury, but rather a method of arriving at the difference between the average weekly wage fairly computed before the accident and the employee's wages or wage earning ability after the accident. See 2 Larson, Workmen's Compensation, § 57; Infelt v. Horen, 136 Mont. 217, 346 P.2d 556; Shoemake Station v. Stephens, (Okl.) 277 P.2d 998; Greenfield v. Industrial Accident Board, 133 Mont. 136, 320 P.2d 1000; Devlin v. Iron Works Creek Construction Corp., 164 Pa.

Super. 481, 66 A.2d 221; Whyte v. Industrial Commission, 71 Ariz. 338, 227 P.2d 230; Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710.

■ The question here is what was claimant's average weekly wage prior to the accident? Defendants argue that there is no finding by the trial court that the formulae found in § 59–10–12(m) (2) will not fairly represent the average weekly wage and that there is, therefore, no basis for applying any method except that prescribed by the formula. There is merit to this contention. Subdivision (3) permits the use of a method other than that specified in subdivision (2) only when such methods will not fairly represent the employee's wage earning ability. We think the trial court, if it considered the methods prescribed under subdivision (2) for computing average weekly earnings unfair under the facts as disclosed by the evidence, should have made findings of fact which would justify the use of another method as provided by subsection (3) and that this court might properly remand the cause for such findings. It is plain to us, however, that the trial court did not follow (c) or (d) because the undisputed evidence showed the claimant had worked for various drilling companies during 28 of the preceding 30 weeks in 1960 at an average weekly wage of $133.75. Under such evidence, we think it would be manifestly unfair to apply the hourly wage being re-

ceived by claimant at the time of his injury as a measure of his average weekly wages prior to the accident. We have examined the record and find the evidence of prior earnings of claimant undisputed. True enough, such testimony was objected to at the trial and admitted over such objection, but admission of that evidence while referred to in defendant's brief is not made the basis of a point relied upon for reversal and, therefore, cannot be urged on appeal. We think the undisputed evidence in this case justifies the resort to § 59–10–12 (m) (3). Batte v. Stanley's, 374 P.2d 124. As we have pointed out, the evident intent and purpose of the Legislature is to make the injured workman's loss of earning ability the basis for determining the amount of compensation to which he is entitled.

Finally, defendants argue that causal connection as a medical probability was not established. We have examined the record and find the contention to be without merit.

We do not want to be understood as approving the granting of an award in a workman's compensation case under the provisions of § 59–10–12(m) (3) without findings of fact based upon substantial evidence to justify resort to that provision of the statute. In this case, however, we think it unnecessary to remand the case for additional findings.

The judgment should be affirmed.

IT IS SO ORDERED.

COMPTON, C. J., and MOISE, J., concur.

CARMODY and CHAVEZ, JJ., not participating.

### Supplemental Opinion

PER CURIAM.

■ Attention has been called to our failure to determine whether attorneys fees should be allowed claimant's attorney on appeal. No motion for allowance of attorneys fees was filed. The request appears at the conclusion of claimant's brief and was overlooked by us. In view of the fact that the judgment of the trial court awarding claimant compensation was affirmed, attorneys fees are awarded claimant for the benefit of his attorney on appeal in the sum of $750.00.

IT IS SO ORDERED.

CARMODY and CHAVEZ, JJ., not participating.

### On Motion for Rehearing

PER CURIAM.

This cause coming on before the court on motion for rehearing, Chief Justice COMPTON, and Justices MOISE and NOBLE sitting, and the court having considered said motion and the briefs of counsel, and being sufficiently advised in the premises, it is ordered that said motion be, and the same is hereby denied.

It is further ordered that appellee, E. T. Kendrick, be and he hereby is awarded an

additional sum of $150.00 as and for his attorneys fees on said motion for rehearing; said attorneys fees to be in addition to any other attorneys fees heretofore awarded on appeal.

IT IS SO ORDERED.

CARMODY and CHAVEZ, JJ., not participating.