**OTTAWA COUNTY and the State Insurance Fund, Petitioners,**

**v.**

**Sylvia KING, Widow, and the State Industrial Court of the State of Oklahoma, Respondents.**

**In the Matter of the Death of Claude J. King.**

**No. 40576.**

Supreme Court of Oklahoma.

July 21, 1964.

Mont R. Powell, Moraul Bosonetto, Oklahoma City, for petitioners.

R. W. Smith, James Reed, Miami, Charles Nesbitt, Atty. Gen., for respondents.

HALLEY, Vice Chief Justice.

Claude J. King was a deputy sheriff of Ottawa County, Oklahoma, and was one of the jailers of the County Jail of that County. There were three jailers and Claude J. King had the shift from twelve midnight to eight o'clock in the morning. On August 18, 1961, he made arrangements with the jailer whose shift was from four P.M. to midnight to continue on through King's shift so that he could go fox hunting the night of the 18th of August and the morning of the 19th. King went on this fox hunt with several friends and his son, Tommy, who was between twelve and thirteen years of age. The Kings came home the morning of the 19th about six A.M. Claude King let his son out of the car they were riding in and told him to milk the cow and do some other chores. Mr. King took one of the hunters, a Mr. Scott, to Scott's home which was some distance away. He returned to his home about seven A.M. At four o'clock on Saturday afternoon, Mr. Claude King's wife returned after being away at her daughter's home and found Mr. King dead on the floor of his bedroom. He only had on his shorts and undershirt. He had been shot six times. His body was approximately half way between the bed he had apparently been lying on and the bedroom door.

There was evidence that one of the shots that struck Claude King had been fired from outside the house and the other five shots were fired from inside the house. It is believed that the six shots that hit Claude King were fired by his twelve and a half year old son, Tommy King.

Tommy King made the wife of his father's half-brother accompany him that day. She testified he told her that he did not like his father because he made him do things

and that he did not like his father because he was a law officer and that he did not like officers of the law. It was claimant's contention that the death of Claude J. King arose out of and in the course of his employment as Deputy Sheriff of Ottawa County. Ottawa County and the State Insurance Fund assert that the evidence in the case shows affirmatively that the deceased was not in the course of his employment at the time of the alleged shooting, nor did it arise out of his employment and the State Industrial Court had no jurisdiction to make an award.

It may be said that Tommy King was charged with the murder of his father and is now confined at the Northeastern State Hospital at Vinita, Oklahoma, an institution for the insane. We set out a letter from the Superintendent of the hospital which gives the diagnosis of Tommy King's mental trouble:

"25 October 1961
The Honorable George G. Russell
Judge of the County Court
Ottawa County
Miami, Oklahoma
　　　　Re: KING, Tommy
　　　　　Your Court # 398
Dear Judge Russell:

The above named patient is a twelve-year-old, white boy, who was admitted to this hospital on August 31, 1961, on your order for observation and examination for a period not to exceed ninety days; he is charged with the murder of his father.

We have completed our examination in this case and have arrived at a diagnosis of schizophrenic reaction, childhood type, manifested by flattened affect, ambivalence, evasiveness, inability to distinguish reality from fantasy, autism, and spotty memory defect. This is a psychotic diagnosis and the patient is considered to be incompetent. The patient is a very immature individual who could not aid in his own defense and he could not distinguish right from wrong since he is unable to dis-

tinguish reality from fantasy at times. I would recommend that this patient be committed to a mental hospital for psychiatric treatment.

If you have any questions please feel free to contact us. Since we have completed our examination we wish to return the patient to the jurisdiction of your Court.

Sincerely,
Wayne J. Boyd, M.D.
Superintendent"

Petitioners make one contention and one only and that is that the evidence in this case shows affirmatively that the deceased, Claude King, was not in the course of his employment at the time of the alleged shooting, and that his death did not arise out of his employment and for these reasons the award for the death of Claude King should be vacated. With this contention we agree.

The evidence in this case shows that Claude King's body was found on the floor of his bedroom with six bullet wounds. It appeared that he had been in bed when he was first shot and then arose and fell to the floor. His twelve year old son is conceded to be the person who fired the fatal shots. It is reasonable to presume that Claude King had gone to bed after his return from the fox hunt. There was nothing to indicate that he was performing the duties of his office of deputy sheriff and jailer. He was in his home and surely neither contemplated nor expected any attempt to be made upon his life. That he knew what had happened to him would be highly conjectural. It may have been his duty to make arrests sometimes but certainly it was not expected that he make arrests in his own home when he was either asleep or resting. To us there is simply no evidence that the death of Claude King "arose out of and in the course of his employment." As recently as March 24th of this year, in the case of Graham v. Graham, Okl., 390 P.2d 892, we held:

"An injury 'arising out of' the employment, within the meaning of the Workmen's Compensation Act, must have resulted from a risk reasonably incident to the employment. There must be apparent to the rational mind, upon consideration of all the circumstances, a causal connection between (1) the conditions under which the work is required to be performed and (2) the resulting injury."

That case involved the killing of Don L. Graham, who was operating a restaurant, by one Ramey, who was the husband of one of the waitresses in the restaurant. There was no explanation of the acts of Ramey except that they may have been due to his mental condition. In the case at bar there is no explanation for the acts of Tommy King except his mental condition which caused him to dislike peace officers and he hated his father for the reason he was a deputy sheriff. These facts were not shown to have been known before the death of Claude King. As was said in the Graham case, supra, "There must be apparent to the rational mind upon consideration of all circumstances a causal connection between (1) the conditions under which the work is required to be performed and (2) the resulting injury." We see no justification for the award made in this case.

We have many times held that we will vacate an award of compensation as a matter of law where the award is based on a material finding of fact which has no competent evidence to support it. See Southwestern Bell Telephone Company v. Nelson, Okl., 384 P.2d 914. Also 14A Okla. Digest, Workmen's Compensation, .

The result here is regrettable but Ottawa County did not purchase life insurance for its deputy sheriff but only insurance to pay for injuries that might arise out of and in the course of his employment.

The award made herein is vacated.

BLACKBIRD, C. J., and DAVISON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.

JOHNSON, J., dissents.

JOHNSON, Justice (dissenting).

I respectfully dissent to the conclusion reached by the majority opinion. The majority opinion follows the rule set out in Graham v. Graham, Okl., 390 P.2d 892, as follows:

"An injury 'arising out of' the employment, within the meaning of the Workmen's Compensation Act, must have resulted from a risk reasonably incident to the employment. There must be apparent to the rational mind, upon consideration of all the circumstances, a causal connection between (1) the conditions under which the work is required to be performed and (2) the resulting injury."

With this rule I am in complete accord, but to my mind it has no application to the case at bar. Such a rule might reasonably be applied to a mechanic or similar occupation, but the deceased here was in a very different category. It is the duty of a deputy sheriff to investigate disturbances, and if he is injured or is killed during the performance of that duty an entirely different situation is presented than in the case of an assault by a third party upon a mechanic. In that event such an occurrence would not be "reasonably incident" to the employment. But in the case of a peace officer, personal injury by a third person is not only "reasonably incident" to his occupation but is an event which is "apparent to the rational mind" and one which has a direct "causal connection between the conditions under which the work is required to be performed and the resulting injury."

In 99 C.J.S. Workmen's Compensation § 227, pages 768–769, appears this line in the text:

" * * * So, an injury to a peace officer assaulted while attempting making an arrest, or while answering a call for help, or while patrolling his beat

in the line of duty arises out of the employment."

Again in 58 Am.Jur., Workmen's Compensation, Sec. 265, in regard to assaults by third parties appears the following:

" * * * It is also established that such an injury is to be regarded as having arisen out of the employment when the nature of the employment is such as naturally to invite an assault, or when the employee is exposed to an assault by the character of his work, or when he is protecting or in charge of his employer's property, and the assault naturally results because of the employment, and not because of something unconnected with it, so that it is a hazard or special risk of the work. * * *"

The text then goes on:

"This rule is applicable, inter alia, in the case of injuries to peace officers * * *"

The only evidence in this record as to why this event occurred is that the assailant had it in for peace officers. There is no evidence of any personal feud. It is therefore reasonable to assume that the slaying would not have occurred if the deceased had not been a deputy sheriff.

The evidence shows the deceased to have been on twenty-four hour duty. From the facts shown it is reasonable to conclude that when the first shot was fired from without the house that he awakened and started to investigate. As he was approaching the door, the remaining shots, six in all, struck him down, and he was found dead upon the floor. The firing of the first shot constituted a law violation, and it was his duty to investigate. As a result of this he met his death.

In view of all the decisions of this court requiring a liberal construction of the Workmen's Compensation Law, I am convinced that this death arose out of and in the course of deceased's employment, and the death award should be sustained. I therefore respectfully dissent.