Billy M. WARTHEN and Wayne A. Warthen, Co-Administrators of the Estate of Charles Lee Warthen, Deceased, Claimants,

v.

## SOUTHEAST OKLAHOMA STATE UNIVERSITY, Respondent,

and

### The State Insurance Fund, Insurance Carrier.

### No. 55207.

Court of Appeals of Oklahoma,
Division No. 1.

Dec. 1, 1981.

Rehearing Denied Jan. 12, 1982.

---

J. Clark Russell, Oklahoma City, for claimants.

Michelin A. (DeLier) Hobbs, Fred Nicholas, Jr., Oklahoma City, for respondent and insurance carrier.

WILSON, Judge:

The issue in this workers' compensation case is when, if ever, the death or injury of a teacher engaged in extracurricular school activities may be said to arise "out of and in the course of" the teacher's employment so as to be compensable under 85 O.S.Supp. 1977, § 11.

## I.  THE FACTS

Charles Lee Warthen, a teacher and head of the drama department at Southeast Oklahoma State University in Durant, also happened to be a certified basketball referee.  At the request of the Dean of Men, Mr. Warthen was officiating at an inter-fraternity basketball game on campus one evening when he collapsed to the gymnasium floor, dead of a heart attack at the age of thirty-eight.

The administrators of Mr. Warthen's estate successfully sought death benefits for his two dependent daughters.  The award was affirmed *en banc.*  The University and its insurer now petition for review, contending the trial judge erred in finding the death arose out of and in the course of Mr. Warthen's employment because his ·duties did not require him to referee extracurricular basketball games on his own time and for no extra pay.

## II.  GENERAL RULES AND FACTORS APPLICABLE TO RECREATIONAL OR EXTRACURRICULAR INJURIES

In considering the University's contention, we find some guidance in the growing body of law addressing the compensability of deaths or injuries sustained while the

employee is participating in job-related social or sporting events, so-called "recreational" injuries. *See generally*, Larson's Workmen's Compensation Law, Vol. 1A §§ 22.00–22.30 (1979); Annot., 47 A.L.R.3d 566 (1973); Annot., 19 A.L.R.2d 1372 (1951).

In these cases, the issue is not whether the event or activity is within the formal scope of the employee's duties since people are seldom hired specifically to attend the office Christmas party or play shortstop on the company baseball team. Rather, the issue is whether the event or activity "is sufficiently related to the employment to justify the conclusion that the injury arose out of and in the course of employment." 47 A.L.R.3d 566 at 571. We see this issue as a refinement of the long-standing requirement in Oklahoma of a causal connection between the employment and the injury. *B & B Nursing Home v. Blair*, 496 P.2d 795 (Okl.1972); *Ottawa County v. King*, 394 P.2d 536 (Okl.1964).

■ In deciding the issue, courts consider a number of factors. The principal factors discussed in the cases collected in 47 A.L.R.3d 566 include whether the employee was compelled, expected, pressured, requested, encouraged, or permitted to attend; the degree of employer sponsorship and control of the activity or event; and the benefits derived from it by the employer.

Professor Larson states in Vol. 1A, § 22.-00 of his treatise:

> Recreational or social activities are within the course of employment when (1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or (2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or (3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

An employee who is out-and-out compelled to attend almost always recovers compensation. Otherwise, no one factor is dispositive and cases go both ways depending on the circumstances and factors present in each case. Generally speaking, we detect a modern trend toward liberality in allowing awards in such cases. We think this is as it should be since innumerable decisions hold that the Workers' Compensation Act should be applied and construed liberally in favor of the employee. *See, for example, B & B Nursing Home v. Blair, supra.*

### III. OPERATION OF THE FACTORS IN OKLAHOMA RECREATIONAL INJURY CASES

The development of the law relating to recreational injuries has been somewhat sketchy in Oklahoma.

In the early case of *Slick v. Boyett*, 160 Okl. 111, 16 P.2d 237 (1932), the Oklahoma Supreme Court vacated an award made to an employee who was injured during a practice of the company baseball team. *Slick* was followed to the same effect in another baseball team case, *Biggs v. Presto Lite Div. of Eltra Corp.*, 462 P.2d 641 (Okl. 1969).

The Court, however, refused to apply the *Slick* and *Biggs* cases in deciding *City of Oklahoma City v. Alvarado*, 507 P.2d 535 (Okl.1973). There, a fireman was awarded compensation for an injury he sustained in a volleyball game on the firehouse premises during his shift. Though remanding the case for other reasons, the Court held that a sufficient causal connection existed between the employment and the injury. In the Court's words:

> Where the recreational activity is shown to be accepted (by the employer) and regularly indulged in, it may become a regular incident and a condition of the employment.

This conclusion was reached despite the absence of evidence as to the "extent of compulsion, encouragement or permission extended [by the employer] to engage in the questioned recreational activity." Instead, the Court pinned its holding on evidence that:

. . . . volley ball was a recognized activity at the fire station, participated in by any employee desirous of playing and acquiesced in and engaged in by supervisors and superior officers.

Thus, returning to the factors outlined above, we find in *Alvarado* a good example of the Court applying the element of employer "sponsorship and control" of the activity as discussed in 47 A.L.R.3d 566 and Professor Larson's element of the activity occurring "on the premises during a lunch or recreational period as a regular incident of employment."

The factors of employer sponsorship and control and the activity being on the premises, as well as the degree to which the employee is encouraged or pressured to participate in the activity, are also apparent in *Shoemake Station v. Stephens*, 277 P.2d 998 (Okl.1954), cited by the Court in the *Alvarado* case. There, sustaining an award to an employee who was injured while boxing with his boss, the Court held in Syllabus 2:

> Where an employer keeps boxing gloves at his place of business for the amusement of his employees and encourages them to engage in boxing and participates in such sport with them, an injury sustained by an employee while engaged in boxing with his employer at the place of business and on the premises of the employer, at the employer's request constitutes an accidental injury arising out of and in the course of his employment and if disabling is compensable.

On the other hand, the lack of these factors can be seen in the recent case of *State Farm Ins. Co. v. Workers' Compensation Court*, 609 P.2d 779 (Okl.1980). In that decision, the Court vacated an award of death benefits to the widow of an employee who was killed while riding his motorcycle during a free period at a training conference his employer was conducting at a state lodge. Holding that the accident did not "arise out of" the decedent's employment, the Court stressed that the employee had gone 35 miles away from the lodge to reach the motorcycle trail he was using and that the employer exercised no "direction or compulsion" over what the employees did during their free period. In short, the vital causal connection between the employment and the injury was simply not shown.

## IV. SCHOOLTEACHER CASES FROM OTHER JURISDICTIONS

One factor which has not received much attention in Oklahoma is the benefit the employer derives from the activity. It is, however, a factor considered by courts in other jurisdictions in cases which, like the case at bar, involve injury or death of teachers engaged in extracurricular activities.

One such case is *Tredyffrin-Easttown School Dist. v. Breyer*, 48 Pa.Cmwlth. 81, 408 A.2d 1194 (1979). Mr. Breyer, a high school math teacher who volunteered as assistant coach for the track team, sought compensation for an injury he sustained at the annual track team picnic held at the head coach's house. Determining the teacher was entitled to an award, the Court considered the benefit to the employer school district, recognizing "the importance to employers of social events which sustain good relationships with and the morale of their employees." The Court continued:

> It cannot be gainsaid that the picnic in the instant case promoted the School District's interest in good relationships between its teachers and their students and the vitality of its athletic programs.

Other circumstances considered in *Breyer* included the employer's approval of the teacher's voluntary services and its lending tables and chairs for the picnic.

Also of interest is *Maurice v. Orleans Parish School Bd.*, 295 So.2d 184 (La.App. 1974). There, a substitute teacher who had volunteered to assist a school girl's club in putting on a style show was injured during a rehearsal in the auditorium after school. Seeking a vacation of the compensation award the teacher received, the school board argued, much like the University in the instant case, that the injury did not occur within the course and scope of the teacher's employment because she was not

paid for the extra work, because she was volunteering on her own time, and because as a substitute she was not required to participate in extracurricular activities. The Court rejected this argument and held:

> We are satisfied that a regular, full time teacher who is injured while performing extra work not connected with his or her usual duties (as for example, while coaching a school athletic team) would be entitled to compensation even though such extra work was being done after school hours and without added pay therefor; and, as regards workmen's compensation, we see no difference between a regular, full time teacher and one who only substitutes.

Further application of the benefit-to-the employer element can be discerned in cases where teachers were held entitled to recover compensation for injuries sustained on the way to or from extracurricular activities under the special duty or errand exception to the coming and going rule. *See, Heinz v. Concord Union School Dist.,* 117 N.H. 214, 371 A.2d 1161 (1977) (death of teacher killed on the way home to change clothes and pick up his wife to chaperone a school dance arose "out of and in the course of" his employment); *Horvath v. Industrial Commission,* 26 Wis.2d 253, 131 N.W.2d 876 (1965) (affirming award to home economics teacher and sponsor of the Future Homemakers of America who was injured in a car accident on the way home to bathe and change for an F.H.A. banquet); *Bobertz v. Bd. of Education of Hillside Tp., Union County,* 134 N.J.L. 444, 48 A.2d 847 (N.J. 1946) (a faculty sponsor injured in an assault on her way home from a school club party was entitled to compensation).

## V. APPLICATION OF THE FACTORS TO THE CASE AT BAR

The present case exhibits all the factors we have discussed to one degree or another.

The record establishes that teachers at Southeast Oklahoma State University were encouraged to participate in extracurricular school activities. The Dean of Men testified that the faculty was indeed "expected"

to participate. Like the Court in *Maurice v. Orleans Parish School Bd., supra,* we find no significance in the fact that the teacher was not paid for his participation in the extracurricular activity.

Neither do we think it important that Mr. Warthen was not absolutely required to referee the basketball game or that he had otherwise fulfilled his extracurricular obligations by sponsoring the drama club in his own department. We do think it important that, even apart from the University's general encouragement of faculty participation in student activities, the teacher was specifically requested to officiate at the game by a member of the administration. *Compare, Shoemake Station v. Stephens, supra,* the Oklahoma case where the employee engaged in boxing at the employer's request.

We believe the degree of employer encouragement of the activity in this case brought it, in Professor Larson's language, "within the orbit of employment."

The present record also shows some degree of employer sponsorship of the activity in that the University provided the facilities for the inter-fraternity basketball tournament, including the fieldhouse, the lighting in the gym, the janitorial services afterwards, and so on. Employer sponsorship here was at least as great as that in *Tredyffrin-Easttown School Dist. v. Breyer, supra,* where all the school provided was tables and chairs for the coach to use in throwing the track team party, and is similar to the fire station's providing volleyball facilities in *City of Oklahoma City v. Alvarado, supra.*

It is true that the activity did not "occur during a lunch or recreational period as a regular incident of the employment." On the other hand, it did occur "on the premises" in the University gymnasium. As Professor Larson himself points out, no one factor is controlling.

Additionally, the fact that the game was on the premises gives this case another feature in common with the Oklahoma recreational injury cases where awards were upheld, *Alvarado* and *Shoemake Station,* as

well as the school cases from other jurisdictions. And, it distinguishes the present case from the *State Farm* case, *supra*, where the award was vacated because the employee's motorcycle death occurred miles away from the site of the company conference and had no connection with his employment.

Finally, we believe the benefit to the employer University was clear. When the Dean was asked about social and other outside activities at Southeastern, he responded, "Well, we think that the extracurricular activities are important. They may not be the most important, but we feel like they are just as important as the curriculum activities." At another point he stated such extracurricular activities were "all part of the university community and to the welfare of the student," and "an integral part of campus operation." Even aside from this testimony, in our view it is obvious that athletics and extracurricular activities are a benefit to any college, perhaps especially a smaller college like Southeastern.

Hence we see that most every factor weighs in favor of the award made in the case at bar.

## VI. SUMMARY AND CONCLUSION

■ Mindful that the language "out of and in the course of" employment must, like the rest of the Workers' Compensation Act, be liberally construed to favor the employee, and in keeping with the modern trend, of which we approve, we hold that the death or injury of a teacher engaged in an extracurricular school activity is compensable under 85 O.S.Supp.1977, § 11, as long as the activity is sufficiently related to the employment so as to supply the necessary causal connection between the two. Factors to be applied in determining whether this connection is sufficient include, but are not necessarily limited to, the degree to which the employee was compelled, expected, pressured, requested, encouraged, or permitted to participate; the degree of employer sponsorship and control; other circumstances such as whether the activity was regularly conducted on the work premises or during lunch or recreational breaks; and the benefit derived from the activity by the employer.

Oklahoma cases dealing with the topic of recreational or extracurricular injuries, though not precisely in point with the instant case, illustrate the operation of these factors and we believe this opinion is in accord with Oklahoma law to date. The factors are more directly illustrated in schoolteacher cases from other jurisdictions and we find these cases persuasive as well.

■ Considering all the circumstances of the case at bar and applying the various factors, we conclude that Mr. Warthen's death on the basketball court was sufficiently connected to his position as a teacher at Southeast Oklahoma State University to support the trial judge's finding, affirmed *en banc*, that the death "arose out of and in the course of" the teacher's employment so as to be compensable under 85 O.S.Supp.1977, § 11. Accordingly, the award of statutory death benefits to Mr. Warthen's dependents is SUSTAINED.

BOX, P. J., and REYNOLDS, J., concur.